RUSSELL HINCKLEY, Plaintiff in Error, *v.* ALBERT KERSTING, Defendant in Error.

### ERROR TO ST. CLAIR.

To a banker or broker who deals in depreciated bills, as an article of commerce, the rule of *caveat emptor* applies; and if a bank bill purchased by a broker proves to be of less value than the price given for it, the vendor is not bound to make it good; especially where the transaction is in good faith.

When persons are engaged in any particular traffic, the presumption is, that they are better acquainted with the value of the commodities in which they deal, than the community generally.

THIS was an action originally commenced before a justice of the peace, to recover the money paid for a certain worthless bill.

The plaintiff is a banker, the defendant is a German, who understands the English language imperfectly, and is a butcher

by trade. The cause was appealed to the Circuit Court of St. Clair county, and tried at the September term, 1858, of said court, before the court and jury, SNYDER, Judge, presiding. Judgment was rendered in favor of defendant below. By agreement of counsel, said cause was heard in the second Grand Division.

On behalf of plaintiff below, one *Gruber* testified, that in the fore part of December, 1857, at the request of defendant, he took to plaintiff's bank, $112 in paper, among which was the ten dollar bill in controversy—that he inquired of the clerk of plaintiff what he paid for paper money, who replied that they discounted at four and a half or five per cent. The clerk looked at the money, and stated a five dollar bill to be a bad one; witness took the bills back to defendant, who took out the five dollar bill, and told witness to get specie for the balance, at the discount proposed. Witness then took the bills back to plaintiff's bank, including the one in controversy, and the clerk gave him gold for the bills, less discount. That the next day, or the day after, Affleck, a clerk of plaintiff, called upon witness and told him the bill was a bad one, and wanted him to take it back. That the next morning he again called upon witness, and told him Mr. Hinckley wanted to see him; he then went to plaintiff's bank; plaintiff told him he must give him back the money he got for the bill, or take back the bill. Witness then took the bill to defendant, who said he would not take it back—that plaintiff was a banker and must keep it. Witness returned the bill to plaintiff, at the same time telling him what defendant said.

·*Affleck*, a clerk for plaintiff, testified, that he was posting books at the time Gruber came in—that in reply to an inquiry of Gruber, he said they took currency at five per cent. discount; that he passed his fingers over one end of the bills, and at the time supposed all were Illinois bills—that Gruber went out, came back again, and handed the bills to another clerk of plaintiff, who gave Gruber gold for them, less discount; don't recollect the amount paid; thinks the paper was discounted at about four and a half per cent. That after Gruber left, the other clerk in looking over the bills, handed the ten dollar bill to witness, who examined it and found it to be worthless; that soon afterwards he went out in town to find Gruber, and told him he must take back the bill; witness had not the bill with him at the time. The next morning witness saw Gruber again, and got him to go to the bank; he went, and Mr. Hinckley told him, Gruber, that he must take back the bill. Gruber replied that he would take it to Kersting. He then went out and returned, saying that Kersting would not take it back.

The plaintiff asked the court to give the following instructions, viz:

"That if the jury believe, from the evidence, that the defendant sent the bill in controversy to the plaintiff, with other bills, to have exchanged for specie, and the defendant's agent gave said bill to plaintiff's agent, and received money therefor; and if they further believe that said bill was at the time worthless, and that the plaintiff offered to return the same to defendant within a reasonable time, then the jury should find for the plaintiff the amount of money paid for said worthless bill."

"If they believe, from the evidence, plaintiff's agent gave to defendant's agent money for the bill in controversy, believing at the time that it possessed value, when in fact it possessed no value, and was worthless, and that plaintiff returned, or offered to return the same to defendant within a reasonable time, then they should find for the plaintiff the amount of money so paid for said worthless bill."

Which instructions the court refused as asked, but gave them with the following modification: "These instructions are given with the proviso that the jury believe the transfer of each bill to have been a separate contract in itself, and that said bills are not parts of one whole contract."

In the refusal of them as asked, and giving them as modified, the plaintiff excepted.

The court gave the following instruction on the part of the defendant, viz.: "If the jury believe that Hinckley bought of Kersting a ten dollar worthless bill among other good bills at a discount, and had a good opportunity, at the time of the purchase, of determining the value of all the bills, then Hinckley cannot recover back the amount estimated to be paid for the worthless bill, unless Kersting either expressly warranted the value of the bill, or practiced fraud upon Hinckley, or knew that the bill was worthless at the time."

To the giving of which instruction the plaintiff excepted.

The jury found the issue for the defendant. Plaintiff moved for a new trial, for the reasons following:

The court refused to give the instructions as asked by the plaintiff, but modified the same.

The court gave improper instruction on the part of defendant.

The jury found contrary to the law and evidence.

Which motion was overruled by the court.

The plaintiff now assigns for error, the refusal of the court to give the instructions as asked for by the plaintiff, giving the instruction on part of defendant, and the overruling of the motion for a new trial.

G. Trumbull, for Plaintiff in Error.

W. H. and J. B. Underwood, for Defendant in Error.

Walker, J. Conceding, that when depreciated or worthless bills are paid on a precedent debt, or as money loaned, or paid on the purchase of property, that the person who passes them, upon a proper notice, is liable for the value at which they were received ; it does not follow, that such would be the case when they are purchased at a discount, as an article of commerce. When they are paid on a debt, loaned as money, or paid on the purchase of property, they are both paid and received as so much money, and are not taken on speculation. When legal coin might be required, anything less than its value will not be a satisfaction, unless the value of such bills was known when received, as in a case where the parties act in ignorance of the fact of their want of value, and suppose them to have the value at which they were passed. But when they are purchased as a commodity of commerce, they are treated then as articles of sale, and the buyer purchases on the best terms he can fairly obtain, and the seller procures the best price he honestly can. Bankers and money brokers follow the buying and selling of such bills, and other money, as a matter of profit, in the same manner as those dealing in merchandize, produce or other chattels. With them such paper is fluctuating in price, at different times and in different places, as are other articles of trade ; and their profits are greater or less, owing to the demand or supply of the article in the market. No reason is perceived why the rule of *caveat emptor* should not apply to the sale of bank bills with those trading in them, precisely as it does to persons purchasing other articles of property. It can make no difference that they are choses in action, because the rule is uniform, that the purchaser of a bill of exchange, promissory note, or other negotiable instrument, without fraud, inducement or guaranty, takes it at his own risk. On the sale of such instruments by mere delivery, the law implies no agreement that the maker or drawer are solvent, or that the money shall be paid. And it is not true, that if the instrument thus purchased proves to be of less value than the price given, that the seller is liable to make it good. That liability accrues by the endorsement, guaranty, or by fraud practiced on the buyer. Bank bills are negotiable promissory notes of incorporated companies, and the title passes to the purchaser by delivery, as it does with articles of personal property.

When persons are engaged in any particular trade, the presumption is, that they are acquainted with the value and intrin-

sic worth of the articles which they are engaged in buying and selling. And so it is to be presumed, that bankers and money brokers are better acquainted with the genuineness and value of the circulation of banks, the paper of which they buy, than is the community generally. Their opportunities are better, and the interest of their business necessarily leads them to inform themselves in this respect, beyond other persons.

In this case it appears that plaintiff purchased the bills of defendant at a discount, in the course of his business as a money broker. He paid for them the agreed price, after the bills were inspected by his clerk; and upon that examination one of the bills of the lot was rejected as worthless, and the remainder were taken, including the one in dispute. The plaintiff had ample opportunity to examine and satisfy himself of the genuineness and value of these bills, and the examination was sufficiently thorough to enable him to reject one of them. There is no evidence that defendant had any knowledge that this bill was worthless, or in any way defective. And when the clerks of plaintiff, in twice running the bills over, did not discover the fact, it may well be, that the defendant had no such knowledge. The defendant in no way warranted or guarantied the genuineness of these bills, and there is no liability by contract, and as no fraud was shown, we cannot infer liability on that ground. The testimony simply amounts to this, that defendant's agent presented the bills at plaintiff's bank, and asked what would be given for them, and the agent of plaintiff, after examining them, informed him, and the price was received, and the bills delivered. It does not appear, that defendant by his agent, made any statement or representation in regard to the bills, or was asked any question requiring any such statement. The plaintiff took the property on inspection and at his own price, and if it is not of the value he supposed, it is his own want of information or want of attention, which has produced this loss. And as the loss must fall on one of two innocent persons, so far as we can see from the evidence, we think that it must be on the purchaser, and not the seller, as he has failed to require a warranty or guaranty of the value of this money, and has not shown that defendant knew it to be worthless. The instructions given by the court were consistent with this view of the law, and were proper, and the verdict of the jury is supported by the evidence, and we are not disposed to disturb their finding.

Upon the whole of this record no error is perceived, for which the judgment of the Circuit Court should be reversed, and the same is therefore affirmed.

*Judgment affirmed.*