Ruddell *v.* Fhalor *et al.*

No. 7384.

RUDDELL *v.* FHALOR ET AL.

PROMISSORY NOTE.—*Payable in Bank.*—*When Endorsee takes free from Defences.*—An endorsee, for value, before maturity, and without notice, of a promissory note, negotiable by the law merchant, takes it free from all equities and defences existing between the maker and payee thereof.

SAME.—*Fraud.*—*Pleading.*—*Answer.*—As to the sufficiency of an answer in such case, alleging fraud in the procurement of such note by the payee, without the fault or negligence of the maker, see opinion.

SAME.—*Negligence of Maker.*—When the maker of a note governed by the law merchant, by his negligence and undue confidence, puts it in the power of the payee to obtain the money of innocent parties on his name and credit, as between him and the endorsee thereof, before maturity, for value. and without notice, such maker should bear the loss occasioned thereby.

From the Wells Circuit Court.

*W. W. Woollen, J. S. Dailey* and *L. Mock,* for appellant.

HOWK, J.—This was a suit by the appellant against the appellees, upon a promissory note, of which the following is a copy:

"$500.00.     LANCASTER TP., WELLS CO., IND.,
                                    "February 1st, 1872.

"Six months after date (or before, if made out of the sale of Drake's Horse Hay-Fork and Hay-Carrier), we promise to pay to James B. Drake, or order, five hundred dollars, payable at the First National Bank of Indianapolis, value received, with use, without any relief from valuation or appraisement laws; if suit shall be instituted to enforce the payment thereof, I agree to pay a reasonable attorney's fee.

(Signed)                    "GEORGE and JOHN FHALOR,
                                    "SOLOMON FHALOR.

"Witness: CHAS. GOLDEN,
                "E. W. BETTES."

Endorsed: "J. B. DRAKE."

"September 22d, 1873. For value received, being in

settlement of partnership business, I hereby assign my interest in this note to James H. Ruddell, without recourse.
(Signed)                    "W. W. WOOLLEN, SR."

The appellees, the defendants below, were the makers of the note in suit, and it was alleged in the complaint that the note was due and unpaid.

The cause, having been put at issue, was tried by a jury, and a general verdict was returned for the appellees, and with their general verdict the jury also returned their special findings on particular questions of fact, submitted to them by the parties, under the direction of the court. Over several motions of the appellant, in reference to the answers of the jury to interrogatories, and his motion for a new trial, and his exceptions saved, the court rendered judgment on the general verdict against the appellant for the appellees' costs.

In this court, the following decisions of the circuit court have been assigned, by the appellant, as errors:

1. In overruling his demurrer to the second paragraph of the appellees' answer; and,

2. In overruling his motion for a new trial.

The questions arising under these alleged errors, we will consider and decide in the order of their assignment. Before, however, we enter upon the consideration of any question presented by the record of this cause, it is due to the learned judge of the trial court that we should note the fact that the decisions below have not been sustained in this court by the appellees' counsel, by any brief, argument or citation of authorities; so that, if we should arrive at a different conclusion from that of the circuit court, upon the questions presented for decision, it may properly be attributed, to some extent at least, to the neglect of the appellees in abandoning the case on and after its appeal, and in failing to inform us of the grounds of the rulings in their favor, and to sustain those rulings by argument and authority.

1. In the second paragraph of their answer, the appellees

alleged, in substance, that, on the 1st day of February, 1872, two persons, then to appellees entirely unknown, appeared at the appellees' residence, one of them calling himself James B. Drake, and representing himself to be the patentee of a machine or contrivance called "Drake's Horse Hay-Fork and Hay-Carrier," and the other calling himself Charles. Golden ; that the said persons then and there proposed and offered to appoint the appellees George and John Fhalor their agents to sell said contrivance ; that, during the nego- tiations relating to such contract, nothing was said between said parties about a note, or the execution of a promissory note, by the appellees, to said Drake, or to any other per- son ; that, when said George and John should accept such agency, they were to sell said machines, and account to said Drake, and were to divide the profits with said Drake ; that they were not called on or asked to sign any note or other obligation to pay money ; that no note or obligation was either read or shown to the appellees, and if they signed the note in suit, or other obligation to pay money, they did so without knowing it, and, if so, the said note, by the artifice and trickery of said Drake and Golden, was so hidden and disguised as that they could not discover or prevent, by the use of due diligence. Appellee Solomon said that he was a Pennsylvanian by birth, and was educated in the German language, and did not well understand the English language when spoken, and could not read the English language, and did not, and could not, read the said agreement mentioned ; that said Drake pretended to read said agreement to him, but that, as he afterward learned, he did not read it cor- rectly ; that in so reading, or pretending to read the same, he did not read of any note, or of any reference to a note or obligation to pay money, and the appellee Solomon did not know that said agreement made any mention or reference to a note till long after said note was in the appellant's hands ; and that, by the blandishments, flattery and persuasion of

said Drake and Golden, and their representations that large profits could be made, said George and John were induced to accept the appointment of such agents, and then and there, upon the request of said Drake and Golden, said George and John signed a paper called an "agreement," accepting such agency, and on request said Solomon then signed said "agreement," as witness thereto, and for no other purpose, which paper the appellees were to and did keep and retain.

And the appellees said that said Golden and Drake represented to them that it would be necessary, right and proper for the appellees to sign said agreement in duplicate—that was, they should sign another paper just like the one they were to and did keep, in order, as said Drake and Golden represented, that they might have a copy to keep ; that the appellees did put their names to another paper, which they in good faith believed was an exact copy of the agreement they were to keep, and nothing else ; that the appellees then (at the time of filing their answer) feared and believed that, instead of having signed a copy of said agreement, they had, through the artifice, fraud and trickery of said Drake and Golden, put their names to the note in suit ; but the appellees said that, if they did sign said note, they did so unwittingly, without intending so to do, and were so procured so to do by said artifice, fraud and trickery, so adroitly done and performed by said Drake and Golden that the appellees could not detect or know it ; and that, if they did so sign said note, they never, at any time, delivered the note sued upon to said Drake and Golden, or to any other person or persons.    Wherefore, etc.

We are of the opinion that the facts stated in this second paragraph of answer were not sufficient to constitute a defence to the appellant's action, and that the court clearly erred in overruling his demurrer to said paragraph.    The note in suit was payable at a bank in this State, and was

therefore negotiable as an inland bill of exchange. The appellant was the owner and holder of the note, as the endorsee thereof before maturity, for value and without notice. Under the law merchant, which governs the negotiability of inland bills of exchange, and fixes and determines the rights and liabilities of the parties thereto, there can be no doubt, we think, that the appellant, as the endorsee of the note sued upon for value, before maturity and without notice, took such note free from all the equities and defences which might have existed as between the appellees, as the makers, and the said James B. Drake, as the payee, of the said note. It was not alleged in said second paragraph of answer, that the appellant, at the time he became the owner, as endorsee, of said note, had notice of any of the facts set forth in said paragraph as a defence to this action. Possibly the facts stated by the appellees, in said paragraph of answer, would have constituted a good defence in their behalf, if suit had been brought against them on the note by James B. Drake, the payee thereof; but, however this might have been, it is very certain, as it seems to us, that those facts were not sufficient to constitute a valid defence in appellees' favor to the suit of the appellant on said note as the endorsee thereof. *Murphy* v. *Lucas*, 58 Ind. 360; *Cornell* v. *Nebeker*, 58 Ind. 425; *Bremmerman* v. *Jennings*, 61 Ind. 334; *Maxwell* v. *Morehart*, 66 Ind. 301; *First Nat. Bank of Lawrenceburgh* v. *Lotton*, 67 Ind. 256; *Indiana Nat. Bank* v. *Weckerly*, 67 Ind. 345; *Marshall* v. *Drescher*, 68 Ind. 359; *McCoy* v. *Lockwood*, 71 Ind. 319; *Zook* v. *Simonson*, ante, p. 83.

It will be seen, from the summary we have given of the facts alleged in the second paragraph of answer, that an effort was probably made to show thereby that the note in suit had been obtained from the appellees without fault or negligence on their part, by and through the artifice, fraud and trickery of Drake, the payee of the note. But we

think that the paragraph wholly fails to state or show any such case. The paragraph was the joint answer of the three makers of the note sued on, and while it was alleged that one of the makers had been educated in German, and could not read the English language, yet it may be fairly inferred from the silence of the paragraph on the subject, that the other two makers of the note had been educated in English, and could readily read the English language. It seems to us that the appellees were grossly negligent in confiding in "the blandishments, flattery and persuasion of said Drake and Golden," who were "entirely unknown" to the appellees; and it may be fairly inferred from the allegations of said paragraph of answer, that they, the appellees, were probably induced to sign the papers presented to them by said Drake and Golden, without proper caution, as much or more by "their representations that large profits could be made," as by their "artifice, fraud and trickery." The case of *Nebeker* v. *Cutsinger*, 48 Ind. 436, is in point. In that case, it appeared that the maker of a note, payable at a bank in this State, had been induced, by the fraud and trickery of the payee, to sign his name to such note, when he, in good faith, believed that he was executing a paper of an entirely different kind, and had no intention to sign a note; and it was held that the maker of the note was liable to a *bona fide* endorsee thereof for value, if such maker was guilty of negligence in failing to use reasonable care to inform himself of the contents of the paper so signed by him. In such a case as the one at bar, we think the true doctrine is, that the makers of such a note as the one in suit, who, by their carelessness or undue confidence, have enabled another to obtain the money of an innocent person, should answer the loss they have occasioned.

Upon the allegations of the second paragraph of the appellees' answer, which, no doubt, stated their defence in its strongest and most favorable light, we are of the opinion

that the note in suit was obtained from them by and through their gross carelessness and undue confidence in strangers; that they thereby put it in the power of Drake, the payee of the note, on the faith of their names and credit, to obtain the money of innocent persons; and that, as between them and the endorsees of their note before maturity, for value and without notice, they should be required to answer and bear the loss occasioned, or materially contributed to, by their own folly and negligence. The appellant's demurrer to the second paragraph of answer ought to have been sustained, and to overrule it, as the court did, was clearly such error, we think, as requires the reversal of the judgment.

Our conclusion in regard to the insufficiency of this second paragraph of answer renders it unnecessary for us to consider now the questions arising under the alleged error of the court in overruling the motion for a new trial. The evidence is in the record, and, without considering it at length, we may properly say that, in our opinion, it utterly fails to sustain the general verdict of the jury; and for this cause a new trial ought to have been granted. We need hardly say, we think, that the point in judgment in the case of *Zook* v. *Simonson*, *supra*, is not involved in or presented by the record of this cause.

The judgment is reversed, at the appellees' costs, and the cause is remanded with instructions to sustain the demurrer to the amended second [third?] paragraph of answer, and for further proceedings not inconsistent with this opinion.