FIRST STATE BANK OF PLEASANT DALE, APPELLEE, v. JOHN BORCHERS, APPELLANT.

FILED FEBRUARY 20, 1909. No. 15,545.

1. Notes: DEFENSES. The fact that the circumstances surrounding the purchase of a negotiable promissory note before its maturity were sufficient to excite the suspicion of a prudent man concerning the instrument will not defeat a recovery. The proof must establish that the purchase was made with knowledge of the facts concerning the execution of the note, that plaintiff believed that there was a defense to the instrument, or that he acted in bad faith or dishonestly.

2. ———: ———: INSTRUCTIONS. Defendant having testified that he was induced to sign a negotiable instrument upon the representation of the payee, which he relied on, that it was a copy of an agreement for the use of a farm gate, and that he could not read the English language, it was not error to instruct the jury, the evidence being considered, that it was defendant's duty to read the instrument or have it read to him, and, if he could not himself read the writing, to "otherwise learn the contents," so that he might not be imposed on and cause an innocent purchaser to suffer, and that it was for the jury to say from all of the facts and circumstances of the case whether defendant had been negligent in the care exercised by him to learn the contents of the note.

3. Payment. If a purchaser of a negotiable instrument gives the holder an ordinary bank draft therefor, payment is complete as soon as said draft has passed beyond the buyer's control.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*Willard E. Stewart* and *George A. Adams,* for appellant.

*Hall, Woods & Pound* and *R. H. Smith, contra.*

ROOT, J.

Action on a negotiable instrument by an endorsee thereof. Plaintiff prevailed, and defendant appealed.

The defense is that defendant's signature to the note in question was procured by fraud and deceit, and upon the payee's representation that it was a copy of an agreement relative to an option to purchase a farm gate; that defendant cannot read the English language, and relied on the payee's statements; also a denial that plaintiff was a *bona fide* purchaser. The testimony tends very strongly to prove that the payee did cause defendant to believe that he was merely signing a writing concerning a gate. The payee, on the day that the note was executed, sold it for nearly par to one Laune, and indorsed the note: "Without recourse. R. H. Browning." Laune sold the note to plaintiff about the 13th of July, 1905, and received $100 therefor.

1. The first complaint is that the court refused to give instruction numbered "V" requested by defendant, but gave its instruction numbered "V." They are as follows:

"Where to an action on a promissory note by an indorsee thereof the defense interposed is fraud, or illegality in the inception of the note, or in procuring its execution, the burden of proof is upon the plaintiff to prove that he is a *bona fide* holder; that is, that he purchased and paid for the note without knowing that the maker claimed any defense thereto, and that he made such purchase before the note became due for a valuable consideration, and that such purchase was made in the usual course of business, without any notice of facts or circumstances which would prompt an ordinary prudent  make (man) to investigate, or make inquiry, which if followed up, or made, would have led to knowledge of such defense."

"The mere fact that circumstances at the time of the purchase of the note may be such as to excite suspicion in the mind of a prudent man is not sufficient to impugn the title of an innocent purchaser. The proof must go to the extent of showing that the purchaser purchased with knowledge of such facts and circumstances as shows want of honesty or bad faith on his part in the purchase of the note."

We have condemned an instruction that requires a purchaser of negotiable paper before maturity to follow up by inquiry any suspicious fact or circumstance relative to the note that may come to his attention at or before the date of his purchase. *First Nat. Bank v. Pennington,* 57 Neb. 404. To constitute bad faith, the buyer must have had knowledge of infirmities in the note, or have had a belief based on circumstances known to him that there was a defense thereto, or the evidence must tend to prove that the purchase was made under such circumstances as indicate bad faith or a want of honesty on the part of the indorsee. *Dobbins v. Oberman,* 17 Neb. 163; *Myers v. Bealer,* 30 Neb. 280; *First Nat. Bank v. Pennington, supra; Phelan v. Moss,* 67 Pa. St. 59, 5 Am. Rep. 402; *Second*

*Nat. Bank v. Morgan*, 165 Pa. St. 199, 44 Am. St. Rep. 652. Instruction "V" requested by defendant is not a correct statement of the law, nor is instruction "V" given by the court erroneous.

2.   It is urged that instruction numbered "VII," given by the court, is erroneous.   The portion criticised is as follows:

· "Touching this, you are instructed that it is the duty of one signing his name to an instrument to read it, if he can read it, or to bring such ability to read as he possesses into use, so far as it may enable him to identify the character of the instrument, or, if he cannot read at all, to otherwise learn the contents of the instrument he is signing, so that he may not be imposed upon by fraud or sign a note that may cause innocent purchasers thereof to suffer.   He is chargeable with any neglect in failing to perform this duty.   Whether or not the defendant was guilty of any neglect in signing the note the way he did is a question of fact for you to determine from all the facts and circumstances of the case, taking into consideration the evidence as it may bear upon the question to what extent the defendant was illiterate, and whether or not he was without negligence in the care exercised by him to know the contents of the instrument before he signed it."

Counsel complains that the court did not in said instruction inform the jury that, if plaintiff was not an innocent purchaser, he could not take advantage of the negligence of defendant in not ascertaining the nature of the writing signed by him.   The court, however, did not tell the jury that plaintiff could recover if defendant was negligent without regard to the *bona fides* of the bank.   In instruction numbered "II" the jurors were told that plaintiff could not recover unless it purchased the "note in good faith before maturity, and for a valuable consideration, in the usual course of business."   It is also argued that defendant was placed under the necessity of proving a greater degree of diligence than the law imposes, but we cannot agree with counsel.   *Dinsmore & Co. v. Stimbert,*

12 Neb. 433; *Ruddell v. Fhalor,* 72 Ind. 533, 37 Am. Rep. 177; *Fisher v. Von Behren,* 70 Ind. 19, 36 Am. Rep. 162; *Bedell v. Herring,* 77 Cal. 572, 11 Am. St. Rep. 307; *Williams v. Stoll,* 79 Ind. 80, 41 Am. Rep. 604; *Lindley v. Hofman,* 22 Ind. App. 237; *Mackey v. Peterson,* 29 Minn. 298.

3. Upon defendant's request the court had instructed the jury that, if plaintiff before he paid for the note in suit learned that defendant claimed that it had been obtained by fraud, it ought not to have paid therefor; that it must use ordinary care to stop payment of the draft, and that it would not be a purchaser in good faith. The jury evidently requested further instructions, and the court then added to said instruction the words "if he failed to exercise such ordinary care," and then further instructed: "Touching this twelfth instruction, you are further instructed that by it is meant only that, if the plaintiff should get notice that the defendant claimed that the note was obtained by fraud and that he had a defense to that note before he had completed the purchase of the same, then it would become his duty not to complete the purchase. If, however, on the other hand, the evidence should show that at the time he learned of the defendant's defense to the note he had already purchased the same, so that as between the plaintiff bank and the owner of the note, Laune, the bank was then holden for the payment of the consideration, then in such case the bank would still be an innocent or *bona fide* purchaser. If at the time of receiving the notice the sale was so far completed by giving Mr. Laune credit on his passbook for that amount by the Columbia National Bank, so that as between Laune and the Columbia National Bank the purchase was completed, then in such case the plaintiff, being liable for the amount, although the draft was not yet cashed, and he must stop its payment, would be an innocent holder." In connection with his criticism of this amendment, counsel argues that the evidence disclosed that plaintiff had knowledge before paying for the note

that defendant claimed a defense thereto.  The first purchaser from the payee offered the paper for discount to a bank in Lincoln where he kept an account, but the cashier stated that the instrument had originated in territory tributary to plaintiff, and it must be given the first opportunity to buy.  About July 4 plaintiff's cashier, Ackerman, talked with the cashier of the Lincoln bank about the note, and again on the 10th of that month. Ackerman noticed that the note was indorsed "without recourse," and asked the reason, and whether there was anything wrong with it.  The Lincoln man said that it had been deposited by one of their best customers, and that he had every reason to believe that it was all right.  Ackerman then said to send it to him, and, if the signature was genuine, he would purchase the paper.  The note was sent to plaintiff, and Ackerman compared the signature thereto with defendant's genuine signature.  July 13, Laune inquired of the Lincoln bank what had been done with the note.  Ackerman was communicated with over the telephone, and replied that plaintiff would take it and sent a draft to said bank for $100. The Lincoln bank was plaintiff's correspondent, and credit was given Laune and plaintiff's account charged July 14.  Ackerman testified that his first knowledge that defendant claimed a defense to the note was acquired August 7, whereas defendant asserts that he told him in the forenoon of the 13th of July that the instrument was procured by fraud.  There is considerable evidence in the record corroborating both Ackerman and defendant, sufficient to support a finding for one party or the other, but it was for the jury to settle the issues of fact upon the conflicting testimony.  The qualification to the instruction was not erroneous in the light of the testimony. If, as indicated by plaintiff's evidence, Laune was credited on the books of the Lincoln bank with plaintiff's draft before it had notice of any infirmity in the note, the consideration for said purchase was as completely beyond

plaintiff's control as if it had paid currency to Laune therefor.

The official reporter read for plaintiff the testimony of an absent witness who had testified on the former trial of the case. It was shown that the witness was in Seward county, and that an unsuccessful attempt had been made to procure his presence. Defendant also caused the reporter to read the testimony of an absent witness, and we are satisfied that the judgment should not be reversed because the witness was not produced in court.

Defendant was evidently imposed upon by the payee of the note, but he has had a fair trial before a jury on all of the disputed facts. The instructions were complete and fair, and now that the jury has found that plaintiff. purchased the note in question before its maturity in the usual course of business *bona fide* for a valuable consideration, and without notice of any infirmity therein, the judgment should be and is

AFFIRMED.