## Hugh C. Harris *vs.* William D. Johnson.

First Judicial District, Hartford, January Term, 1915.

Prentice, C. J., Thayer, Roraback, Wheeler and Beach, Js.

The question whether a promissory note was obtained from the maker by fraud and conspiracy, as alleged by him in his defense, is one for the jury, where the evidence upon that issue is conflicting.

After evidence has been introduced in support of this allegation, the plaintiff assumes the burden of showing that he is a holder in due course.

The purchaser of a note for considerably less than its face value from an entire stranger, without any knowledge of or inquiry into the financial responsibility of its maker or indorsers, can hardly be said to show that the purchaser was a holder in due course; on the contrary, it tends to indicate that a disclosure of the whole truth would have been fatal to that claim.

The amount given for a note may, under certain circumstances, be an important consideration in passing upon the good faith of the alleged purchaser. It may be so small in comparison to the real worth of the note, as to suggest that the claim of having paid any value for it is a mere subterfuge to conceal the true character of the transaction. Such evidence should, therefore, be submitted to the jury in connection with all the other evidence touching the question of good faith.

Argued January 7th—decided February 23d, 1915.

Action by an indorsee against the maker of a promissory note to recover the amount thereof, brought to the Court of Common Pleas in Hartford County and tried to the jury before *Markham, J.;* the trial court directed a verdict for the plaintiff for $624, and from the judgment thereon the defendant appealed. *Error and new trial ordered.*

*Stewart N. Dunning* and *Charles F. Roberts,* for the appellant (defendant).

*Joseph L. Barbour,* for the appellee (plaintiff).

RORABACK, J.   The plaintiff's cause of action is founded upon a negotiable promissory note for $550. The note is in the following form:—

"$550.00                    New York, Sept. 23, 1911.
On Sept. 16, 1912, after date I promise to pay to the order of C. Frank Doebler Five Hundred fifty 00 Dollars at office of Watson & Kristeller, 100 William St. N. Y., with interest at 5% per annum.
Value received.
                              Wm. D. Johnson."

It came to the plaintiff by indorsements about two months before it was due.   The consideration for the transfer was $400.

The answer avers that on September 23d, 1911, this note, with a large number of others and a written agreement of that date, were procured from the defendant by C. Frank Doebler and Frederick W. Kristeller by conspiracy, fraud and duress.   It is averred that all these notes were to be kept in possession of Kristeller, the defendant's attorney, until the sum of $100,000 from a certain franchise became due and was paid. It is also averred that when the notes were executed the defendant was not indebted to Doebler, and that the plaintiff is not the bona fide holder of the note in question.   These allegations were denied by the reply.

After all the evidence had been introduced, the court, upon the motion of the plaintiff, directed the jury to find a verdict for the plaintiff.   This instruction is one of the assignments of error.

The defendant introduced evidence tending to prove his allegations and claims that the note was obtained by fraud and conspiracy, and that it was given without any valid consideration, and was negotiated by Doebler in bad faith.

Without going into details of the testimony, it is sufficient to state that the defendant testified that in 1910 he was interested in procuring a franchise for the construction of a dam at Austin, Texas, to cost $500,000, and that he had then expended about $75,000 in attempting to secure this privilege. At that time one C. Frank Doebler, who was the payee of the note now in controversy, was in the defendant's employ upon a salary of $50 per week. In January, 1911, Doebler ascertained that the Austin franchise was to be taken in the individual name of the defendant, instead of the name of a company in which Doebler claimed to have an interest. He then wrote a letter to the defendant and claimed that his salary should be increased to $75 per week, and that he should receive $50,000 of the profits which might accrue from the construction and operation of the dam at Austin. Doebler also demanded that the defendant should make an assignment of the Austin franchise to a corporation in which Doebler claimed an interest. Johnson did not then accede to this request, but it now appears that on August 29th, 1911, the defendant executed a document by which he agreed that, in the event of a favorable vote on the Austin franchise, the same should not be held by Johnson individually, but should be held by him as trustee for a construction company in which Doebler claimed he was interested.

It is undisputed that on September 23d, 1911, an agreement was made between the defendant (Johnson), C. Frank Doebler, and Harry Lee Zeigler. It appears by the agreement that Johnson obligated himself individually to pay and turn over to C. Frank Doebler, co-incident with the execution of this agreement: (1) the sum of $369, which sum was fixed as an amount due and owing him; "(2) the sum of $500 evidenced by two certain promissory notes of $250 each, maturing

October 14, 1911, and October 28, 1911; (3) the sum of $1,950 evidenced by 26 certain promissory notes of $75 each, the first of which matures September 30, 1911, and one of the remainder weekly thereafter; (4) the sum of $650 evidenced by 7 certain promissory notes, 6 of which are for $100, and one for $50, the first of which matures on October 16, 1911, and one of the remainder monthly thereafter with interest at the rate of 5% per annum; (5) the sum of $3,850 evidenced by 7 certain promissory notes of $550 each, with interest at 5% per annum, the first of which matures on the 16th day of April, 1912, and one of the remainder monthly thereafter; (6) to make, execute and deliver an assignment of the sum of $15,000 with interest at 5% per annum, chargeable out of the first or initial payment of $100,000 agreed to be made by the said city of Austin, Texas, on the completion of work under and in accordance with said franchise."

It is also conceded that upon the day this agreement was made the defendant assigned to Doebler $30,000 in addition to the amount he was to receive under the agreement. This amount of $30,000 was to be taken out of the first instalment of $100,000 to be paid on account of the Austin contract.

Johnson testified that on or about the 20th of September, 1911, Kristeller brought a paper to the defendant, which was prepared at the request of Doebler, which Kristeller said embodied the terms under which Doebler would settle the claim which he claimed to have on the defendant for the money he wanted out of the Austin franchise; that on the 23d of September, when Kristeller, the defendant and Zeigler were present in the office of Kristeller, Doebler said to the defendant that this paper embodied his final demand and had got to be signed before he left the office or "he would raise hell and ruin me"; that he then asked Kristeller, his

attorney, for advice, and he told him that it would cause him untold trouble if he did not sign it, that Doebler was in shape to cause him an immense amount of trouble by jeopardizing the Austin franchise, and that he had better sign it; that he then signed the agreement and the notes; that the note in question was one of the seven for $550 each; that at this time it was agreed that these notes should be left with Kristeller, and that he would keep them in his desk, and that under no circumstances were they to leave his office; that at the time these assignments were executed and the notes delivered to Kristeller, the defendant was not in any way indebted to Doebler, and that he would not have signed the agreement or the notes if it had not been for the threats and statements which Doebler made, and the advice which Kristeller gave; that Kristeller, who at that time was pretending to act for the defendant as his attorney, was in fact assisting Doebler in obtaining the defendant's signature to these documents; and that Doebler transferred to Kristeller $10,000 of the obligations which were made to him on September 23d by Johnson.

The plaintiff and his witnesses denied many of the material statements made by Johnson, and, in substance, stated that his actions in this matter were voluntary, and that the notes were for a good consideration. The testimony as to many of the controlling questions in issue upon this branch of the case was conflicting and contradictory. If these questions had been decided in favor of the defendant, a verdict for him would not have been so manifestly against the evidence as to require a new trial upon this branch of the case.

The plaintiff contends that although it may be assumed that there was evidence tending to prove fraud, yet it appears that the plaintiff obtained the note before maturity and in due course of business.

General Statutes, § 4229, provides: "Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course."

As already stated, the defendant offered evidence to show that the note had been obtained from one having a defective title. Under such circumstances, the case should have been submitted to the jury under an instruction upon this point that, if they found this claim to be true, then the burden fell upon the plaintiff to show that he was a holder in due course. *Parsons* v. *Utica Cement Mfg. Co.*, 80 Conn. 58, 60, 66 Atl. 1024.

The plaintiff, in his deposition, testified that he paid $400 for the note about two months before its maturity; that he never was acquainted with Johnson or any of the parties whose names appear on the paper excepting that of his attorney, George H. D. Foster, who made the purchase for him.

No evidence was presented by the plaintiff to show what investigation was made by Mr. Foster as to the responsibility of the maker or any of the indorsers of the note, or why the amount paid was so much less than the face value of the note. It would have been easy to have offered evidence of the exact facts, as Mr. Foster, the plaintiff's attorney, who purchased the note for him, was present when this case was tried in the court below. The testimony upon this subject is quite noticeable rather from what was omitted than for what was introduced. *Stewart* v. *Lansing*, 104 U. S. 505, 510, 26 L. Ed. 866. So far as the record discloses, the plaintiff was dealing with strangers with perfect indifference as to their financial responsibility. This can hardly be said to be evidence that the plaintiff

acquired the note in due course. Upon the contrary, the absence of any such explanation cannot be accounted for, except on the theory that a disclosure of the whole truth would have been fatal to the plaintiff's claim that he was a holder of the note in good faith. *Stewart* v. *Lansing*, 104 U. S. 505, 511, 26 L. Ed. 866.

The amount paid by the holder of a promissory note purchased before maturity may, under some circumstances, become important in passing upon the question of good faith. The amount paid may be so disproportionate to the real value of the note said to have been purchased, that the claim to have paid any value for it would be considered as a mere subterfuge to conceal the true character of the transaction. In the present case, the deduction of so large a sum from the face of the note is a fact which should have been submitted to the jury in connection with all of the evidence bearing upon the question of good faith. *King* v. *Doane*, 139 U. S. 166, 174, 11 Sup. Ct. Rep. 465, 35 L. Ed. 84.

There is error and a new trial is ordered.

In this opinion the other judges concurred.