J. W. SAMPLE, Trustee and J. W. SAMPLE, individually, *Plaintiff in Error*, vs. HUNDRED LAKES CORPORATION, *Defendant in Error*.

145 So. 193.

Division A.

Opinion filed January 4, 1932.

Petition for rehearing denied January 18, 1933.

*G. P. Garrett*, for Plaintiff in Error;

*Summerlin & Wimberly*, for Defendant in Error.

BUFORD, C. J.—On April 23, 1925, J. W. Sample, representing himself and others, purchased certain property from Lake Marian Groves Corporation. In this transaction Sample executed certain notes and a mortgage to secure the same. In this case we are dealing with the fifth note of the series which was for the sum of $16,212.17, dated April 23, 1925, and due March 31, 1929, with 6% interest from date. The mortgage and the notes were signed "J. W. Sample, Trustee." The mortgage bearing the same date as the note and identifying the notes, and particularly the note here in controversy, began with the following declaration:

"THIS MORTGAGE DEED, Executed this 23rd day of April, A. D. 1923, by J. W. Sample as Trustee, of the County of Polk and State of Florida, hereinafter called the Mortgagor, to LAKE MARIAN GROVES CORPORATION, a Corporation under the laws of the State of Florida, doing business in the County of Polk and State of Florida, hereinafter called the Mortgagee."

The mortgage also contained the following clause:

"IT IS FURTHER AGREED and understood that there is to be no personal liability on the part of the said J. W. Sample, by reason of the execution of these presents as Trustee as aforesaid."

The uncontradicted evidence is that it was understood and agreed between the parties to the transaction at the time of the execution of the notes and mortgage that Sample assumed no personal liability for the payment of the obligation but that the payee and mortgagee was to look ex-

clusively to the security of the mortgage for the payment of the obligation. That such was the accepted meaning of the above quoted clause in the mortgage.

In September, 1925, Lake Marian Groves Corporation, the payee named in the note, assigned and endorsed the same, as it is alleged, to Hundred Lakes Corporation and in consideration of said assignment and endorsement Hundred Lakes Corporation executed to Lake Marian Groves Corporation its note for $10,000.00, which note was afterwards paid.

The evidence shows that at the time of both transactions Sample was considered solvent. The officers of the two corporations involved were doing business in the same town and apparently their offices were located in the same business block, but on different streets, of that town. Sample was also doing business in the same town, which was one of those towns not so large but that most people residing there each knew the other residents of the town and about what their general reputation for solvency and ability to pay was. Interest was payable on the notes annually but no interest was paid and no action was brought to enforce the payment of anything on the note until after the due date thereof.

The note had upon its face "No. 5." The evidence showed that it was on a printed form and, as printed, interest was payable from maturity at 10% per annum. It had been changed with a pen so as to make interest payable from date at 6% per annum. It was signed "J. W. Sample, Trustee."

There is no question in this case of the liability of the maker of a note who executes the same by signing his name and thereafter adding the word "Trustee," and, therefore, the question as to whether or not the word "Trustee" following the name of Sample was merely *descriptio personae* is not involved.

There was a plea which challenged the allegation that the plaintiff was the holder in due course of the instrument sued on. This plea, showing defective title in the payee who was endorser to plaintiff, put the burden on the plaintiff to show that it was holder in due course and, under the provisions of Sec. 4732, R. G. S., 6818 C. G. L., it was incumbent upon the plaintiff to prove by preponderance of the evidence that it took the note in good faith and for value.

On motion the court directed a verdict in favor of the plaintiff.

We might well dispose of this case by order of reversal on authority of Sample vs. Wilson, 101 Fla. 818, 134 Sou. 549, as the only question presented which we will discuss, and which is the one controlling question in this case, is whether or not the facts and circumstances shown by the evidence indicating lack of good faith in the acquisition of the note on the part of the plaintiff was sufficient to go to the jury; however, it may be helpful for us to add something to what was said in that case.

If all the facts and circumstances within the knowledge of the plaintiff at the time of the acquisition of the note were sufficient to put it on inquiry as to whether or not there existed any infirmities which would preclude the payee of the note from maintaining an action to hold Sample personally liable thereon, then it was the duty of the plaintiff to make such inquiry and it could not fail or refuse to make such inquiry and then claim benefit of the lack of knowledge of those facts which would have been disclosed by such inquiry. The salient facts directing the exercise of caution on the part of the purchaser, and of which the purchaser was cognizant at the time of the purchase, were:

This note was numbered 5, indicating that it was the

fifth of a series, the due dates and amounts of the other notes of the same series not appearing therein;

That the printed form of the note had been changed by erasures and insertions with pen and ink;

That the note was signed ''J. W. Sample, Trustee,'' which may have indicated that Sample intended to execute the note in some capacity other than assuming personal liability;

That Sample was considered solvent and good for his obligations:

That the note was offered and purchased at an unusual and unbusiness-like discount.

These facts, with all the other evidence in the case, should have gone to the jury as a basis for its determination of whether or not the note was purchased in good faith, that is, in *legal* good faith. The determination of this question would require the jury to determine whether or not the knowledge of these several conditions required the purchaser to make such inquiry as it could have made to determine whether or not the obligation could be enforced by the payee against the maker as a personal liability and we must hold that the court committed error and invaded the province of the jury in directing a verdict for plaintiff in this case.

It has been held:

''An offer to sell negotiable instrument at very much less than its face value is calculated to excite suspicion to a greater or less extent, according to the circumstances, and that fact always is admissible on the question of good faith.'' 3 R. C. L. 1079. See Olmsted vs. Winsted Bank, 32 Conn. 278, 85 Am. Dec. 260; Hinckley vs. Kersting, 21 Ill. 247, 74 Am. Dec. 102; Williams vs. Huntington, 68 Me. 590, 6 A. St. R. 477; Eiefenthaler vs. Biersach, 182 Wisc. 245.

In Williams & Co., Inc. vs. Wiltz, a Connecticut case reported 137 Atl. 759, it is said:

"The plaintiff, as the holder, is deemed prima facie to be a holder in due course, but it being conceded that the instrument came to it from one having a defective title, the burden under the statute was upon the plaintiff to prove that it was a holder in due course. General Statutes #4417. This provision abrogates, so far forth, the general rule that it is from him who pleads facts to prove them. Parsons v. Utica Cement Mfg. Co., 80 Conn. 58, 60, 66 A. 1024.

"That plaintiff became the holder of this paper before maturity was not disputed, but it was contended by defendant that the evidence disclosed facts and circumstances in connection with the purchase which justified a finding that the plaintiff was chargeable with notice of the infirmity in the instrument because of its knowledge of such facts that its action in taking the instrument amounted to bad faith. General Statutes #4414. Chief among these was the admitted fact that this instrument, with others of like character, was bought by plaintiff at a substantial discount from face value.

"The payment of the full face value of a bill or note is not necessary to make one a holder for value; nor does the fact alone that it was bought at a discount charge the purchaser with notice of existing equities. The consideration paid for the note is, however, a fact to be considered upon the question of good faith and inadequacy of the consideration may, in connection with suspicious circumstances, justify a finding of bad faith. 8 C. J. 486, 508, 509.

"In Harris vs. Johnson, 89 Conn. 128, 93 A. 126, we had occasion to consider this question in a situation quite analogous to that here presented. In that case a $550 note was purchased by the plaintiff about two months before it became due for $400. The plaintiff offered no proof that he had made any investigation as to the responsibility of the maker or any of the indorsers of the note, or as to why the amount paid was so much less than the face value. The trial court directed a verdict for the plaintiff. In reversing the judgment, this Court said:

'The amount paid by the holder of a promissory note purchased before maturity may, under some circumstances, become important in passing upon the question of good faith. The amount paid may be so disproportionate to the real value of the note said to have been purchased, that the claim to have paid any value for it would be considered as a mere subterfuge to conceal the true character of the transaction. In the present case, the deduction of so large a sum from the face of the note is a fact which should have been submitted to the jury in connection with all of the evidence bearing upon the question of good faith.' "

See also Moore & Co. v. Burling, et al., 93 Wash. 217, 160 Pac. 420.

In Union State Bank of Emory et al. vs. Savord, 186 Wisc. 365, 202 N. W. 688, it is said:

"Whether holder of note took in due course and in good faith is generally for the jury, depending on inferences to be drawn from all circumstances."

In Deerk et al. vs. Babcock, et al., a Nebraska case reported in 231 N. W. 754, it is said

"An indorsee of a negotiable instrument, the title to which is defective, who takes with knowledge of such facts that his action in taking the instrument amounts to bad faith, will be deemed to have taken with notice of such defective title."

Whether or not a negotiable note is acquired by an indorsee in due course and in good faith is a question to be determined upon the facts in each case and it is not possible to state in a concise definition just what will constitute bad faith, or what acts of omission or commission will show the exercise of good faith. Sample vs. Wilson, 101 Fla. 818, 134 Sou. 549. But, we take it that it can be safely said that where the facts and circumstances made known at the time to the purchaser clearly indicate that there is some infirmity existing which would preclude the payee, or the then holder by indorsement, of the note from successfully maintaining an action to enforce the payment thereof

against the maker that he is thereby put upon inquiry as to whether or not such infirmities do exist and if by inquiry he could ascertain that such infirmities do exist he could not, by refusing to make inquiry, place himself in the attitude of a holder in due course for value and in good faith.

For the reasons stated, the judgment should be reversed, with directions that a new trial be awarded. It is so ordered.

Reversed.

WHITFIELD, TERRELL AND DAVIS, J.J., concur.

ELLIS AND BROWN, J.J., dissent.

ELLIS, J., dissenting.—This case affords a fair illustration of the trial of a cause at nisi prius without due regard to the pleadings in the case and the issues presented thereby, although the result arrived at is correct in view of the issues presented by the pleas.

The basic facts in the case are that on April 23, 1925, J. W. Sample executed a promissory note in the sum of $16,212.07 payable of Lake Marian Groves Corporation or order on or before March 31, 1929. The note was dated at Bartow, Florida, and signed "J. W. SAMPLE, TRUSTEE." It bore interest at the rate of six per cent. per annum and carried a promise to pay attorney's fees.

The Hundred Lakes Corporation brought an action on the note against J. W. Sample in May, 1929. The declaration alleged that the plaintiff acquired the note from the payee for a valuable consideration before maturity and that the plaintiff is the owner and holder of the note in due course and that the note has not been paid.

A demurrer to the declaration was overruled, which was correct. Thereupon the defendant interposed seventeen pleas. A motion was made to strike pleas numbered 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 13, 14, 15 and 16. A demurrer was interposed to pleas numbered 1, 10, 17. The demurrer and motion to strike came on to be heard and was argued

by counsel, whereupon the Judge made an unusual order in which he sustained "said demurrer" to pleas numbered 2, 3, 4, 5, 7, 9, 12, 14, 15 and 16, to which no demurrer was interposed, and overruled the demurrer to pleas numbered 1, 6, 8, 10, 11 and 13, as to four of which no demurrer was interposed, leaving said the Court, "said pleas to which said demurrer is overruled, together with plea #17, which was not demurred to, standing to the Declaration." There was a demurrer to plea numbered 17, as the record shows. The order then recites that the questions of law involved in this case having been decided on the demurrer, it is not necessary to pass on the Motion to Strike filed at the same time the demurrer was filed, and said Motion to Strike of the Plaintiff to the Pleas of the Defendant, is hereby dismissed."

The case then proceeded to trial. A verdict was rendered for the plaintiff as follows:

"Bartow, Fla., Dec. 6, 29.

"We, the jury, find for the Plaintiff and assess its damages at 20,697.39 and an attorney's fee of 2119.73. So say we all."

Judgment was then entered for the plaintiff against the defendant in the sum of *"TWENTY-TWO THOUSAND, EIGHT HUNDRED SEVENTEEN & 12/100 ($22,817.12) DOLLARS,* damages, including attorney's fees." to which the writ of error was taken. Neither verdict nor judgment appears in the record proper but both appear in the bill of exceptions.

Not possessing the facility of ascertaning what issues were tried except from an inspection of the pleadings as they appear in the record and the orders made upon them, I find that all the pleas interposed were left undisturbed as the demurrer which was interposed to pleas numbered 1, 10 and 17, was overruled as to pleas numbered 1 and 10, and ignored as to plea numbered 17, and the motion to

strike which was addressed to all the others was "dismissed." According to my reckoning, that leaves all pleas in on which the parties went to trial, though no issue appears to have been joined upon any of them.

The first plea was the equivalent of a plea of non est factum and had no support whatever in the record. Pleas 2, 3 and 4 constituted no defense whatsoever as they merely averred in substance that the note was signed as Trustee and the transaction out of which the note issues. Pleas numbered 5, 6, 7 and 8 denied the plaintiff's ownership of the note which had no support in the evidence. Plea numbered 9 was invalid as setting up no defense available against a holder of the note in due course. Plea numbered 10 denied the plaintiff's corporate capacity to sue which plea had no support in the evidence. Pleas numbered 11, 12, 13, averred that the plaintiff acquired the note with notice, actual, as averred in one plea, constructive, as averred in another, of the equities existing in the maker's behalf, which were that the note was signed by him in such circumstances as to show his liability only in a representative capacity.

Plea numbered 14 denied consideration for the note which was not good as a plea and had no support in the evidence. Plea numbered 15 denied that plaintiff acquired the note before maturity and before default, which was invalid as a plea and had no support in the evidence. Plea numbered 16 averred that when the plaintiff acquired the note there was a declaration of trust setting out the terms of the trust under which the defendant executed the note which showed that the note was not the personal obligation of the defendant. That plea was invalid because it did not aver that the plaintiff had actual notice of the existence of the trust and its terms. Plea numbered 17 averred that the note was signed by the defendant as trustee for himself and two other persons and there was at that time an agree-

ment between him and the payee that the maker should not be liable individually on the note and that the property, for part of the purchase price of which a mortgage was given by defendant to secure the payment of the note, should be the sole security for its payment, that the mortgage has not been foreclosed and the plaintiff acquired the note with notice of the agreement with the payee.

Pleas numbered 11, 12, 13 and 17, of which plea numbered 12, so the order recites, went out on demurrer to which no demurrer was interposed, present the issue that although the defendant signed the note as trustee 'for *himself* and two other persons an agreement existed between him and his associates on the one hand and the payee of the note on the other that he, the maker, should not be personally bound and the land which was mortgaged to secure the payment of the note should be the sole security for its payment and that the plaintiff had knowledge of such agreement at the time it acquired the note.

I think the evidence fails to support that issue on the defendant's behalf and the circumstances in which the note was acquired by the plaintiff did not constitute constructive notice of such agreement, even if the pleas presented a valid defense upon that ground.

In the first place the note was a negotiable promissory note. So far the pleas show to the contrary the plaintiff acquired the note for value before maturity and the pleas admit the execution of the note by defendant as trustee for *himself* as well as others. The note was acquired by indorsement in blank by the payee, not by assignment and indorsement as the majority opinion states. I do not agree with the statement in the majority opinion that any plea questioned the *title* of the payee to the note. No plea questions the title of the payee to the note either at the time of its execution or indorsement by the payee and acquisition of the note by plaintiff.

The only question involved is whether the plaintiff acquired the note in such circumstances as to place it upon notice of the existence of a mortgage executed by the maker of the note to secure its payment and the contents of such mortgage containing a clause that the land should be the only security for the payment of the note and that the maker should not be held personally liable upon it.

There was no evidence to support such an issue in defendant's behalf. It is true that the note was acquired by plaintiff at a large discount but if that fact was material at all it was admissible on the question of good faith only. There was no question of good faith in the acquisition of the note by plaintiff nor as to the payee's title to the note. The only question was whether the plaintiff took the note with notice that the maker was not to be bound individually and that the payee could resort only to the security given for its payment. See 3 R. C. L. 1079.

The plaintiff Corporation was a holder in due course because the instrument was complete and regular on its face; it became the holder of the note before it was over due; there had been no previous dishonor of it; it took the note for value and without notice of any infirmity in the instrument or defect in the title of the payee. See Sec. 6814 C. G. L. 1927.

There was no defect of payee's title and the plaintiff had no *actual* knowledge of any defect or infirmity in the note therefore it could enforce the note free from defense available to maker as against original payee unless the knowledge of the facts known to the plaintiff rendered its action in taking it a matter of bad faith. See Secs. 6780, 6815, 6816 C. G. L. 1927.

Mere failure to follow constructive record notice does not necessarily amount to bad faith. See Taylor v. American Nat. Bank of Pensacola, 64 Fla. 525, 60 South. Rep. 783.

The rule that knowledge of circumstances sufficient to excite the suspicion of a prudent man would put the purchaser on inquiry was once announced in Gill v. Cubitt, 3 Barn. & Cress. 466, but was later overruled in Crook v. Jadis, 5 Barn. & Ad. 909, 110 Eng. Rep. Reprint 1028.

Some states follow the rule. It seems to be followed in Vermont and Indiana and New Hampshire, but the rule is not followed in the greater number of States. See Goodman v. Simonds, (61 U. S.) 20 How. 343 Text 367, 15 L. Ed. 934 text 942; Clark v. Evans, 13 C. C. A. 433, 66 Fed. Rep. 263.

Negligence in such case is not bad faith. Atlas Nat. Bank v. Holm, 19 C. C. A. 94, 71 Fed. Rep. 489; Sinkler vs. Siljan, 136 Cal. 356, 68 Pac. Rep. 1024; The St. Joe and Mineral Farm Consolidated Mining Co. v. First Nat. Bank of Aspen, 10 Colo. App. 339, 50 Pac. Rep. 1055; Standard Cement Co. vs. Windham Nat. Bank, 71 Conn. 668, 42 Atl. Rep. 1006; Wildsmith v. Tracy, 80 Ala. 258; Comstock v. Hannah, 76 Ill. 530.

Gross negligence does not deprive a party of the character of a bona fide holder, there must be proof of bad faith. Chapman v. Rose, 56 N. Y. 137, 15 Am. Rep. 401; Iowa College v. Hill, 12 Iowa 462; Lake v. Reed, 29 Iowa 258, 4 Am. Rep. 209; Richards v. Monroe, 85 Iowa 359, 52 N. W. Rep. 339; Central State Bank vs. Spurlin, 111 Iowa 187, 82 N. W. Rep. 493, 49 L. R. A. 661; Bedell v. Burlington Nat. Bank, 16 Kan. 130; Totten vs. Bucy, 57 Md. 446; Jennings v. Todd, 118 Mo. 296, 24 S. W. Rep. 148; Borgess Inv. Co. vs. Vette, 142 Mo. 560, 44 S. W. Rep. 754; First St. Bank v. Borchers, 83 Neb. 530, 120 N. W. Rep. 142; Hamilton v. Vought, 34 N. J. 187; Magee v. Badger, 34 N. Y. 247; Kitchen v. Loudenbeck, 48 Ohio St. 177, 26 N. E. Rep. 979.

There is no question of fraud practiced by the original payee in obtaining the note involved in this case.

In the case of Sample v. Wilson, 101 Fla. 818, 134 South. Rep. 549, the evidence showed that when Arline indorsed the note to Wilson he explained to the latter Sample's representative capacity and that Wilson was advised of the agreement between Sample and Lake Marian Groves Corporation, the original payee. These facts do not appear in this case. I think the judgment should be affirmed.

BROWN, J., concurs.