### MERCHANTS' NAT. BANK OF CHICAGO *v.* CHICAGO RAILWAY EQUIPMENT CO.

*(Circuit Court, W. D. Wisconsin. 1885.)*

NEGOTIABLE INSTRUMENTS — CERTAINTY—ALL TO BECOME DUE ON FAILURE TO PAY A PART.

An instrument in writing in the form of an ordinary promissory note, payable on a day certain, but containing a clause reciting that the instrument is one of a series of notes, and providing that "each and all shall become due and payable to the holder on the failure of the maker to pay the principal or interest of any one of the notes of said series," and also reciting that the consideration of said notes was certain railway freight cars manufactured and sold by the payee to the maker, and providing "that the title of said cars shall remain in the payee until all the notes of said series, both principal and interest, are fully paid," *held* to be a negotiable instrument.

At Law.

*Gregory & Gregory,* for plaintiff.

*I. C. Sloan, S. U. Pinney,* and *Judge Clark,* for defendant.

BUNN, J. This action is brought upon two instruments in writing for the payment of $5,000 each, and declared upon as negotiable promissory notes. A copy of one of the notes is as follows:

"$5,000.00.                        CHICAGO, ILL., January 20, A. D. 1884.

"For value received, four months after date the Chicago Railway Equipment Company promise to pay to the order of the Northwestern Manufacturing & Car Company, of Stillwater, Minnesota, five thousand dollars, at First National Bank of Chicago, Illinois, with interest thereon at the rate of — per cent. per annum from date until paid.

"This note is one of a series of twenty-five notes of even date herewith, of the sum of five thousand dollars each, and shall become due and payable to the holder on the failure of the maker to pay the principal or interest of any one of the notes of said series; and all of said notes are given for the purchase price of two hundred and fifty railway freight cars, manufactured by the payee hereof, and sold by said payee to the maker hereof, which cars are numbered from 13,000 to 13,249, inclusive, and marked on the side thereof with the words and letters 'Blue Line C. & E. I. R. R. Co.;' and it is agreed by the maker hereof that the title to said cars shall remain in the said payee until all the notes of said series, both principal and interest, are fully paid, all of said notes being equally and ratably secured on said cars.

                                    "GEO. B. BURROWS, Vice-President.
"E. D. BUFFINGTON, Treas.
"No. 1.   H. R. M."

Indorsed on back:

> "Northwestern Mfg. & Car Co.
>         "Per J. C. O'GORMAN, Treas."

Indorsed on face:

> "FIRST NATIONAL BANK OF CHICAGO.
>    "Returned.   No account."

Also:

> "Protested for non-payment.
> "May 23, 1884.
>         "E. P. RUNYON, Notary Public."

The other note is the same in all respects except that the date is January 23d instead of January 20th.

The plaintiff having proved the execution of the said instruments by the defendant, and their indorsement to the plaintiff, and having introduced evidence showing that it purchased the same in the usual course of business before due, paying full value therefor in cash, without any notice of want or failure of consideration, rested its case; and the defendant now moves that a verdict be directed by the court for the defendant on the ground that the instruments so declared upon as promissory notes are not such, but are executory contracts, mere choses in action, not negotiable by the law-merchant, in this: *First*, that the time of payment is uncertain, being made to depend in part upon the question whether other instrument or instruments in writing of the same series shall fall due and remain unpaid before the maturity of those sued upon; *second*, that the promise to pay is not absolute or unconditional, but depends upon the performance or readiness of performance on the part of the payee of the stipulation

contained in the instrument in regard to the sale of the cars, and the title thereof being held by the payee until payment of the entire series of such instruments in writing is made.

I am of opinion that neither of these contentions have been made good. On the contrary, it seems to me that these instruments answer all the usual conditions of negotiable promissory notes, in being absolute and unconditional promises in writing to pay a certain sum of money to a particular person at a time fixed. The time fixed in each note is four months after date, and the circumstance that they are made liable to fall due at an earlier date, in the event of the default in the maker to pay the principal or interest of any one of the notes of the series, does not affect the negotiable character of the paper. Nothing is more common, when a series of notes is given constituting part and parcel of the same security or transaction, to make them payable in successive installments at different times, and to provide in each that upon default in the payment of either principal or interest of any, the whole sum shall fall due. In such cases a time certain is fixed for payment, which answers this condition of commercial law applicable to negotiable paper; and the fact that the instrument may become due at an earlier day, through the default of the maker in not paying principal or interest, cannot destroy the negotiable quality of paper intended to circulate as such. It is well known that a large proportion of the real-estate notes given with mortgage security throughout the west are drawn in this manner. These notes go into the hands of different persons, and take with them, as an incident, a corresponding interest in the security.

Upon the other point, that the instrument contains a provision which makes it a more executory contract, upon which the plaintiff cannot recover until he shows performance or an offer to perform, it seems to me that this contention is equally untenable. The construction I should place upon that provision in the notes, taken as a whole, is that it is a recital of the consideration for which the note was given, and of the fact that the payee was to retain a lien by way of mortgage upon the property sold as security for the payment of the notes, and this apparently for the purpose of giving the notes which were intended to be put upon the market a more ready acceptance and circulation, and a better market value. The inference that any one contemplating a purchase of the note would naturally and properly draw, would, I think, be that the freight cars had already been sold by the payee to the maker, and that the payee was to retain a lien and security upon them in the way of a mortgage for the payment of the purchase price, which should inure equally and ratably to all the holders of the notes according to their several amounts, without regard to the time when such notes should fall due.

If this be so, then the contract was an executed one, the consideration for the notes had already passed, and the payment of the notes would not be made to depend upon any condition whatsoever.

And this I believe to be the proper construction to be placed upon the instrument.

There is no doubt considerable conflict in the decisions upon similar questions, and, this being the case, the court feels somewhat free to decide the question upon what it conceives to be the correct legal principles applicable to such cases; and in so doing I shall entertain a hope that the ruling may be found to be grounded upon true principles of commercial law, and also to be in accordance with the best authority.

The motion to direct a verdict for the defendant will be overruled.

The defendant thereupon offered evidence to prove a want of consideration in the making of the note, which evidence being objected to was ruled out, until the plaintiff's position as a *bona fide* purchaser and owner of the notes should be impeached.

Thereupon the defendant rested its case, and the court ordered a verdict for the plaintiff for the amount of the notes in suit, with interest.