HODGE and another, Appellants, vs. WALLACE and others, Respondents.

*May 9—June 21, 1906.*

*Bills and notes: Maturity caused by failure to pay interest: Subsequent transfer: Defenses: Duress: Fraud.*

1. A note providing expressly that delinquency in payment of any interest "shall cause the whole note to immediately become due and collectible," becomes due in such case absolutely, not merely at the option of the holder, and one thereafter taking the note from the payee takes it subject to the equities between the original parties.

2. The evidence in this case is *held* not to show that a note was executed under duress, but to be sufficient to take to the jury the question whether its execution was induced by false and fraudulent representations.

APPEAL from a judgment of the circuit court for Price county: JOHN K. PARISH, Circuit Judge. *Reversed.*

This action was commenced March 14, 1905, to recover the amount due on three promissory notes each bearing date April 15, 1903, for $1,000, payable, respectively, July 15, 1904, July 15, 1905, and July 15, 1906, with interest at six per cent. per annum, payable to Robert Burgess & Son or order, and signed by all of the eleven defendants, and on each note there was indorsed as payment, under date of April 17, 1903, $200. Omitting the signatures and indorsements the note first due reads as follows:

"$1,000.00.                    Prentice, Wis., April 15th, 1903.

"On July 15th, 1904, after date for value received, we jointly and severally promise to pay Robert Burgess & Son, or order, One Thousand Dollars, at Prentice, Wis., with interest at the rate of 6 per cent. per annum from date until paid; interest payable annually. It is stipulated and agreed that if any payment or part payment hereon, or any interest, shall become due and unpaid, such delinquency shall cause the whole note to immediately become due and collectible. In signing this note I waive notice of protest and extension of time."

Each of the other two notes reads the same except one was payable July 15, 1905, and the other July 15, 1906. The complaint alleges three causes of action, one on each of said notes, and each alleges that April 21, 1904, "the said note was, for value, duly sold, assigned, and transferred by said Robert Burgess & Son to L. J. Hodge & Son, and that thereafter and on the 3d day of May, 1904, and before the maturity of said note, the same was, for value, duly sold, assigned, and transferred to the plaintiffs herein, who thereupon became, ever since have been, and now are the lawful owners and holders thereof." The first cause of action also alleges, in effect, that the note became due July 16, 1904; that nothing had been paid thereon aside from the indorsement mentioned, and $78.19 paid by each of three of the defendants on and after said last-mentioned date, leaving due and unpaid thereon $626.82 with interest thereon from July 26, 1904, at six per cent. The second cause of action, in addition to the facts mentioned, alleges, in effect, that the annual interest in the sum of $48.02 became due and payable thereon April 15, 1904, but that no part thereof was paid except $16.35, and that by reason of the failure to pay said interest, and the terms of the note, the whole thereof became due and payable before the commencement of this action. Substantially the same allegations were made in the third cause of action.

The defendants answered by way of admissions, denials, and counter allegations to the effect that each of said notes was signed by the defendants on condition that the signature of one William Goetzke would also be affixed thereto, but which was never done, and hence that none of said instruments ever took effect as promissory notes and were never delivered; that said notes were procured from each of the defendants by false and fraudulent representations and under duress; that such signatures were procured under the fraudulent pretense that Robert Burgess & Son were selling to each of the defendants and others a share of stock in a company

to be organized for the purpose of purchasing from them an imported, full-blooded, registered, Percheron stallion, and that each such share of stock was of the par value of $200, and that there were to be fifteen shares in all, and that each signer would become the owner of one fifteenth interest in the stallion for $200; and that such signatures were taken in a book in which no complete contract or agreement appeared; that such signatures were either attached to another leaf and fraudulently concealed or subsequently fraudulently attached to a pretended agreement to purchase such stallion, to which none of the defendants ever consented; that the obligations of each of the defendants were entirely verbal and made in reliance upon such representations; that the defendants were each induced by such duress and fraudulent representations to sign such instruments upon the assurance of Burgess & Son that no greater liability was thereby created against any of the defendants than $200; that the signature of the defendant *Clemons* to such preliminary agreement was so procured when *Clemons* was so intoxicated as not to understand the nature of his acts, and such intoxication was procured by said Burgess & Son for the purpose of obtaining such signature; that the pedigree and condition of said stallion were not as represented; that the stallion was not as warranted nor suitable for the purposes represented, as Burgess & Son then well knew, and was not worth to exceed $225; that, at the time of signing said instruments, each of the said defendants received as consideration therefor an instrument purporting to be a certificate of stock, reciting therein that the obligation of each defendant was his joint note for $200, but that the same was not a certificate of stock, and no such company had been organized, and the same was of no value; and that the consideration for said instruments totally and wholly failed, and that the plaintiff took said instruments with full knowledge of such false representations, pretenses, and warranties.

At the close of the trial of the issues thus joined the court, directed a verdict of no cause of action against the plaintiffs and in favor of the defendants, and from the judgment entered thereon with costs the plaintiffs appeal.

For the appellants there was a brief by *Barry & Barry* and *Barnes & Magoon,* and oral argument by *R. M. Barnes.* They contended, *inter alia,* that a promissory note matures only when by its terms the principal becomes due; and one who purchases it in good faith, for value, before maturity, is within the protection of the law merchant, although the interest is overdue at the time of purchase. *Kelley v. Whitney,* 45 Wis. 110; *Boss v. Hewitt,* 15 Wis. 260; *Patterson v. Wright,* 64 Wis. 289; *Cromwell v. County of Sac,* 96 U. S. 51; *Railway Co. v. Sprague,* 103 U. S. 756, 762; *Thompson v. Perrine,* 106 U. S. 589, 592. The provision as to the whole note becoming due in case of nonpayment of interest was for the benefit, not of the maker, but of the holder of the note, and means that it is to become due at his option. *Chicago R. E. Co. v. Merchants' Nat. Bank,* 136 U. S. 268. A provision in a promissory note that upon default in the payment of interest thereon for sixty days after such interest becomes due and payable, thereby the whole principal of such note should at once become absolutely due, is permissive only, and does not of itself start the running of the statute of limitations. *Blakeslee v. Hoit,* 116 Ill. App. 83, 87; *Watts v. Hoffman,* 77 Ill. App. 411; *Richardson v. Warner,* 28 Fed. 343; *Nebraska City Nat. Bank v. Nebraska City H. G. L. & C. Co.* 4 McCrary, 319; *Lowenstein v. Phelan,* 17 Neb. 429.

*J. W. Hicks* and *James O'Leary,* for the respondents.

CASSODAY, C. J. 1. At the close of the testimony the plaintiffs moved the court to direct a verdict in their favor and against the defendants for the full amount of principal and interest mentioned in the three notes, but subsequently asked leave to withdraw such motion and to withdraw the sec-

ond and third causes of action, and renewed their motion to direct a verdict in favor of the plaintiffs and against the defendants for the amount named in the first cause of action, which, by the express terms of the note, became due and payable several months prior to the commencement of the action. The court denied such motions and directed a verdict in favor of the defendants, and counsel for the plaintiffs assign such rulings as errors. The claim on the part of the plaintiffs is to the effect that it appears from the uncontradicted evidence that the plaintiffs became the owners and holders of each of the three notes in good faith and for value and before maturity and in the usual course of business, and hence took the same "free from any defect of title of prior parties, and free from defenses available to prior parties among themselves." Secs. 1676—22, 1676—25, 1676—27, of the Negotiable Instrument Law, ch. 356, Laws of 1899. On the other hand, it is claimed on the part of the defendants that, by virtue of the stipulation contained in each of the three notes, the whole of the principal and interest named therein became due and payable six days prior to the time when the notes were transferred by Robert Burgess & Son to L. J. Hodge & Son and nearly three weeks prior to the time when they were transferred by L. J. Hodge & Son to the plaintiffs. That stipulation is set forth in the foregoing statement and need not be here repeated. Each note required interest to be paid thereon "at the rate of six per cent. per annum from date until paid; interest payable *annually*." The stipulation is to the effect that "if any payment or part payment, . . . or *any interest*" *thereon,* should "become due and unpaid, such *delinquency*" should "cause the whole note to *immediately* become due and collectible."

Counsel on both sides refer to adjudications which they claim to be in support of their respective contentions. The case presented is clearly distinguishable from those where the stipulation for accelerating the maturity of the note or notes

on nonpayment of interest or other default is contained in a mortgage or trust deed given to secure the same, and which mortgage or trust deed and notes are construed in some jurisdictions as one instrument in law. In such a case the note or notes may be transferred without the transferee having any knowledge of such stipulation in the mortgage or trust deed. Here the stipulation is in the notes themselves, and every transferee of the same necessarily took them with knowledge of such stipulation. So the case presented differs from those where one of a series of notes or an instalment of interest has become due and unpaid, with no stipulation, as here, that "such delinquency shall cause the whole note to immediately become due and collectible." Thus it was held by this court long ago:

"An indorsee of several notes of the same maker, secured by one mortgage bearing the same date, and payable to the order of the same person at different periods, is not chargeable with notice of any equitable defense of the maker against such of the notes as were not due at the time of the indorsement, by reason of the fact that one of the notes was then overdue. Nor is he chargeable with such notice by reason of the fact that the notes bore interest payable annually, and that one year's interest on all of them was due and unpaid at the time of the indorsement." *Boss v. Hewitt*, 15 Wis. 260. To the same effect: *Kelley v. Whitney*, 45 Wis. 110, 115–117; *Patterson v. Wright*, 64 Wis. 289, 292, 25 N. W. 10.

These cases do not go to the extent of supporting the contention of the plaintiffs. So the case presented is distinguishable from those where the stipulation for accelerating the maturity of the note or notes contained therein is made optional with the payee or mortgagee or his representatives or assigns. *Schoonmaker v. Taylor*, 14 Wis. 313, 316; *Thorp v. Mindeman*, 123 Wis. 149, 101 N. W. 417. There is nothing in any of the stipulations or notes here involved to warrant the suggestion that the payees or transferees of any one of them were thereby given such optional right to declare

the whole note due and payable on failure to pay the annual interest which by the express terms of each note became absolutely due and payable April 15, 1904. On the contrary, it is expressly and clearly declared therein that "such delinquency *shall* cause the whole note to *immediately* become due and collectible." To construe such language as merely optional or permissive would be to destroy the clearly expressed contract which the parties made for themselves and to force upon them a contract to which neither of them ever gave his consent. The terms of the contract are so clear as to seemingly preclude construction. This may account for the small number of adjudications upon the precise point here presented.

In the absence of such express stipulation, and notwithstanding the rulings in the cases cited, it was held by this court several years ago, that "one who takes a promissory note, which shows that interest on the principal sum therein named is past due and unpaid, takes it subject to all equities between the original parties." *Hart v. Stickney*, 41 Wis. 630. That case followed *Newell v. Gregg*, 51 Barb. 263. To the same effect, *First Nat. Bank v. Forsyth*, 67 Minn. 257, 69 N. W. 909. Such ruling, however, was out of harmony with the decisions of this court already cited, and goes beyond what is necessary to sustain the contention of the defendants in this case, based on such express stipulation. In a much later case bearing upon that question this court held:

"The fact that a note bearing interest payable semi-annually was dated, executed, and delivered on a certain day fixes the date for the payment of instalments of interest at the end of every six months thereafter, and no demand was necessary to create a default." *Zautcke v. North Mil. T. Co.* 95 Wis. 21, 69 N. W. 978.

It seems to be pretty well settled that:

"If the principal of the paper is payable in instalments, the paper is considered as dishonored by the failure to pay any one instalment when it fell due, whether the entire debt became due on such a failure to pay or not, and a subsequent

transferee takes it subject to all the equities." Tiedeman,. Com. Paper, § 297; *Vinton v. King,* 4 Allen, 562; *Field v. Tibbetts,* 57 Me. 358; 2 Rand. Com. Paper (2d ed.) § 1047.

But it is said by the same author:

"It is doubtful whether the same rule applies to the failure to pay an instalment of interest, unless the parties have *stipulated* that the entire debt shall become due on the failure to· pay the interest. Although it has been held that the failure to pay the interest will destroy the negotiability of the paper, with or without this stipulation, the better opinion is that, in the absence of such a stipulation, the failure to pay an instalment of interest does not affect the future negotiability of the note or bill." Id.

It was held in Massachusetts more than one hundred years. ago:

"Upon a note payable in eight years with interest payable· annually, an action lies for the interest before the principal is payable." *Greenleaf v. Kellogg,* 2 Mass. 568. To the same effect: *Cooley v. Rose,* 3 Mass. 221; *Walker v. Kimball,* 22 Ill. 537; *Morgenstern v. Klees,* 30 Ill. 422; *Failing v. Clemmer,* 49 Iowa, 104; *Mills v. Jefferson,* 20 Wis. 50.

It is said by Mr. Randolph:

"A municipal bond, like a bill or note, may be conditioned on default in the payment of interest, and will, in such case, mature accordingly, although by its terms the principal was not otherwise to become payable for many years. A provision of this sort—*e. g.* that a note drawing interest annually shall become due on failure to pay the interest—may be contained in a collateral deed of trust or other instrument." 2 Rand. Com. Paper (2d ed.) § 1048.

So it is said by Mr. Daniel:

"Where it is provided in the bonds themselves that, if default be made as to any interest coupon, the bonds shall be due and payable, they so become on default of payment of any coupon." 2 Daniel, Neg. Inst. (5th ed.) § 1506a.

Thus it has been held in·Georgia:

"Municipal bonds, having on their face many years to run, but issued and put in circulation·with an indorsement upon each of them to the effect that, in case default be made in pay-

ing any of the interest coupons at maturity, then, as a part of the contract, the bond itself shall become due and payable, are legally due, as to the whole of the principal, whenever a default in paying interest according to any of the coupons occurs. Time is of the essence of the contract." *Mayor v. City Bank,* 58 Ga. 584, following, and to the same effect, *Sneed v. Wiggins,* 3 Ga. 94; *Ottawa N. P. R. Co. v. Murray,* 15 Ill. 336; *Ferris v. 'Ferris,* 28 Barb. 29. See, also, *Lybrand v. Fuller,* 30 Tex. Civ. App. 116, 69 S. W. 1005; *First Nat. Bank v. Peck,* 8 Kan. 660.

But there are adjudications the other way, notably one particularly relied upon by counsel for the plaintiffs. *Chicago R. E. Co. v. Merchants' Bank,* 136 U. S. 268, 284–286, 10 Sup. Ct. 999, affirming 25 Fed. 809. We must hold that, by the express terms of the stipulation and the default in paying the annual interest which became due and payable April 15, 1904, the whole of each note "immediately became due and collectible." It follows from what has been said that the plaintiffs took the notes after they became due and payable and subject to the equities between the original parties.

2. But we are constrained to hold that it was error to direct a verdict in favor of the defendants. We find no defense established by undisputed evidence. The defense of duress seems to be without foundation so far as the record before us is concerned. What constitutes duress has frequently been stated by this court. *City Nat. Bank v. Kusworm,* 91 Wis. 166, 173, 64 N. W. 843; *Wolff v. Bluhm,* 95 Wis. 257, 259, 70 N. W. 73; *Mack v. Prang,* 104 Wis. 1, 6, 79 N. W. 770; *Galusha v. Sherman,* 105 Wis. 263, 280, 281, 81 N. W. 495; *Rochester M. T. Works v. Weiss,* 108 Wis. 545, 84 N. W. 866; *Anderson v. Anderson,* 122 Wis. 480, 485, 486, 100 N. W. 829. All the authorities agree that duress exists where one party, by the unlawful act of another party, has been induced to make a contract or perform some other act under circumstances which deprived him of the exercise of free will. *Id.* In case of duress the volition of the victim is usually

overcome by fear of imminent injury to his person or property, and hence it is a gross species of fraud.   Id.   Whether duress exists in a particular transaction is usually a question of fact for the jury.   Id.   But in the case at bar the evidence seems to be insufficient to take that question to the jury. While the evidence may be insufficient to establish mental incapacity by reason of intoxication of one of the defendants, yet it may have been admissible as tending to prove the manner in which his signature was procured.   We are constrained to hold that the evidence on the questions of false and fraudulent representations was sufficient to take the case to the jury. Those were the important issues in the case..   Such issues were broad and included not only representations respecting the horse, but the means resorted to and the manner of obtaining the signatures of the respective defendants.   All facts. and circumstances bearing upon such issues were admissible· in evidence.   As there must be a new trial upon such issues, we refrain from further discussion of the evidence.   The direction of the verdict in favor of the defendants was error.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for a new trial.