CLARA B. TAYLOR AND J. FRANK TAYLOR, *Appellants*, v. AMERICAN NATIONAL BANK OF PENSACOLA, FLORIDA, A CORPORATION, *Appellee.*

1.  Under the provisions of Section 2936 of the General Statutes of 1906, which forms a part of what is known as "the negotiable instrument law," a promissory note for $2,250.00, due and payable two years after date, with interest from date at the rate of eight per cent. per annum, interest payable quarterannually, is negotiable, though accompanied by an ordinary real estate mortgage, which contains a provision to the effect that, upon default in the payment of any installment of interest, which interest is payable quarter-annually, the whole amount of such note shall thereby become due and payable.

2.  While it is true that, where a note evidencing a debt and a mortgage to secure its payment are executed at the same time in one transaction, and the mortgage refers to the note, they should be considered together in determining their meaning and effect, this does not mean or imply that the provisions of one of such instruments are to be imported bodily into the other. Considered together or construed together simply means that, if there be any provisions in one of such instruments limiting, explaining or otherwise affecting the provisions of the other, they will be given effect as between the parties themselves and all persons charged with notice, so that the intention of the parties may be carried out, and the entire agreement actually made in the contemporaneous transaction may be effectuated.

3.  As a general rule, the endorsement of a note which is secured by a mortgage carries with it such mortgage. The note is the principal thing, the mortgage being regarded as an accessory, so that the transfer of the debt *ipso facto* carries with it the security.

4.  As a general rule the promise to pay, as evidenced by a promissory note, is one distinct agreement, and, if couched in proper terms is negotiable, while the pledge of real estate to secure that promise, as evidenced by a mortgage, is another distinct agreement, which is not intended to affect in the

least the promise to pay, but only to provide a remedy for the failure to carry out such promise. The holder of the note may. if he sees fit so to do, discard the mortgage entirely and bring an action on the note.

5. Where a bill is filed for the foreclosure of a mortgage, which was given to secure the payment of a note, which note provides for the payment of the interest quarter-annually and the mortgage contains a provision to the effect that, upon default in the payment of any installment of interest, the whole amount of such note shall thereby become due and payable, and there is a positive allegation in the bill that, at the time of the purchase of the note by the complainant bank, which was prior to the maturity of the principal of the note, it had no knowledge that there had. been any default in the payment of interest, or that there was any defense on the part of the mortgagor against the note and mortgage, the fact that no payments of interest were endorsed on note or accompanying mortgage did not make the note dishonored, and the complainant must be deemed a holder in due course of such note, under the provisions of Section 2985 of the General Statutes of 1906, and its action in taking such note under such circumstances did not amount to bad faith, which is required by Section 2989 of such General Statutes, wherefore a demurrer interposed to the bill upon such grounds is properly overruled.

6. A bona fide purchaser of a mortgage, executed apparently on the same date between the same parties and upon the same property as was another mortgage, is not held to notice of latent equities in favor of the other mortgage by reason solely of the fact that the other mortgage was recorded, after the purchased mortgage, but before the transfer.

Appealed from the Circuit Court for Escambia County.

STATEMENT.

On the 23rd day of March, 1911, the appellee as complainant filed its bill in chancery against the appellants

and others as defendants, which bill, omitting the formal parts therof, is as follows:

"The bill of complaint of American National Bank of Pensacola, Florida, complaining of E. R. Caro, Clara B. Taylor, and J. Frank Taylor, her husband, and Bessie W. Wilson, a widow, and Elizabeth Hale Wilson, an infant under the age of twenty-one years, and W. V. Perry, a widow, respectfully shows to your Honor:

1. That the complainant is a National Bank incorporated under the laws of the United States, with its office at Pensacola, Florida; that each of the respondents is over the age of twenty-one years, except the respondent Elizabeth Hale Wilson, who is under said age, and all of them reside in Pensacola, Escambia County, Florida, except the said W. V. Perry, who resides at ....................................., in the State of Alabama.

2. That on the 8th day of December, 1908, the respondent E. R. Caro, being indebted to one D. Hale Wilson, made and delivered to him his promissory note for Twenty-two Hundred and Fifty Dollars ($2250.) payable two years after the date thereof, with interest at the rate of 8% per annum from its date until paid, said interest being payable quarter annually, and on the same day, in order to secure the payment of the said promissory note, executed and delivered to the said D. Hale Wilson, a mortgage on the following described property in the city of Pensacola, Escambia County, Florida, to-wit:—

Lost Six, Seven and Eight (6, 7 & 8), of Block Nineteen (19) in East Pensacola, according to the map of East Pensacola, of record in the office of the Clerk of the Circuit Court, Escambia County, Florida. That in and by the said mortgage, it was provided that it was intended to secure the payment of the promissory note above men-

tioned, and showed upon its face that the said promissory note was payable to the order of the said D. Hale Wilson, and it was especially agreed therein by the mortgagor, that the indebtedness covered by the said mortgage should become immediately due and payable and the mortgage should become immediately foreclosable for all sums secured thereby, if the said indebtedness or any part thereof, or the said interest or any installment thereof should not be paid according to the terms of the said note, or if the mortgagor should omit the doing of anything therein required to be done to the protection of the mortgagee, and that all costs and expenses, including attorneys' fees incurred in collecting said mortgage debt, should be a part thereof, and a lien upon the mortgaged property, and that if a foreclosure of the said mortgage was had and a suit to foreclose the same was rightfully begun, he would pay all costs and expenses of the said suit, including an attorney's fee to the attorney of the complainant foreclosing of fifteen dollars ($15) and 10% upon the amount decreed the complainant, which costs and fees should be included in the lien of the mortgage, and in the sum decreed upon foreclosure; that a copy of the said note is hereto attached marked exhibit "A" and a certified copy of the said mortgage is hereto attached marked exhibit "B," and each is made and prayed to be taken as a part hereof, as fully as though here specifically set forth; that on the 13th day of May, 1910, the respondent, D. H. Wilson, for a valuable consideration endorsed the said note and assigned the said mortgage to the complainant, delivering both of the said papers to it, since which time, both of them have been in the possession of the complainant, who is a bona fide holder thereof in due course, for value and by reason thereof, the complainant avers

that it is entitled to maintain this action to foreclose the said mortgage.

3. That since the negotiation of the said note and mortgage to the complainant, it has learned, but did not before know, that no installment of interest was ever paid on the said note.

4. That some time after the 8th day of December, 1908, and prior to the 10th day of February, 1909, and prior to any installment of interest becoming due on said $2,250 note, the said E. R. Caro delivered to the said D. Hale Wilson another note for twenty-five hundred dollars ($2,500), bearing date of December 8, 1908, with interest thereon at the rate of eight per cent. per annum, payable quarter-annually, and, together with the said note, delivered to the said D. Hale Wilson, another mortgage bearing date December 8th, 1908, covering the same property as exhibit "B" hereto attached to secure the payment thereof; that although the said note and mortgage on their faces were dated the 8th day of December, 1908, they were not in fact executed or delivered on that date, but were executed and delivered on some date subsequent thereto and prior to the 10th day of February, 1909, and subsequent to the date of the execution and delivery of the note and mortgage for twenty-two hundred fifty dollars, copies whereof are hereto attached and are hereinable referred to; that since the negotiation to the complainant of the twenty-two hundred fifty dollars note and mortgage above referred to, the complainant has learned that in truth and in fact as between the respondent, E. R. Caro, and the said D. Hale Wilson, the twenty-five hundred dollars note and mortgage were executed and delivered in substitution for the twenty-two hundred and fifty dollars note and mortgage, which had theretofore been executed and delivered by the said E. R. Caro, as above

set forth, but the said Caro at the time of executing and delivering the said twenty-five hundred dollars note and mortgage, failed and neglected to demand the surrender of, or cause to be surrendered to him, the twenty-two hundred fifty dollars note and mortgage, or to cause any cancellation thereof to be executed, but suffered the said note and mortgage for twenty-two hundred fifty dollars to remain in the hands of the said D. Hale Wilson, without any cancellation thereof, ever having been made, or entered, either upon the said papers or upon the records of Escambia County, Florida, and the said note and mortgage remained in the hands of the said D. Hale Wilson upon the records of Escambia County, Florida, to indicate that they were not valid and subsisting obligations, and the complainant in taking the said note and mortgage had no actual or constructive notice or knowledge of the attempted substitution of the twenty-five hundred dollars note and mortgage therefor, and had no actual notice or knowledge of the existence of the twenty-five hundred dollars note and mortgage.

5.   That the said mortgage securing the said note for twenty-two hundred fifty dollars which the complainant holds was duly recorded on February 4th, 1909, at page 307, of Book 44 of the mortgage records of Escambia County, Florida, and the said mortgage securing the said note for twenty-five hundred dollars was duly recorded on February 10th, 1909, at page 508 of Book 43, of mortgage records of Escambia County, Florida; that each of the said notes secured by the said mortgages was negotiable in its form bore interest at the rate of eight per cent per annum, payable quarter annually, each was due two years after its date and the mortgage securing each showed upon its face that the note secured was negotiable.

6.   That in the latter part of the month of August or

the early part of September, 1909, the said D. Hale Wilson, after negotiations with the respondent, J. F. Taylor, executed and delivered to the said J. F. Taylor, who is the husband of the respondent, Clara B. Taylor, a note bearing date September 9, 1909, for twenty-five hundred dollars ($2,500), due two years after its date in favor of the respondent, Clara B. Taylor, and deposited and delivered with the said note as collateral security, therefore the note and mortgage of the said E. R. Caro, to the said D. Hale Wilson for twenty-five hundred dollars hereinbefore referred to, and also at the same time delivered with the said note as collateral security, therefore a negotiable note of one James T. Geralds for one thousand dollars ($1,000) in favor of the said D. Hale Wilson, dated August 29th, 1906, and due August 29th, 1909, secured by a mortgage on lots thirty-three and thirty-four (33 & 34) of Block one hundred twenty-seven (127) and lot thirteen (13) in Block one hundred (100), all in East King Tract, the said mortgage being executed by the said Geralds and his wife, and having been duly recorded on the first day of September, 1906, in book 35, page 300 of the mortgage records of Escambia County, Florida; that each of the said notes so deposited and delivered as collateral security was duly endorsed by the said D. Hale Wilson and he executed to the said Clara B. Taylor an assignment of each of the said mortgages at the time of the deposit thereof as above stated; that the said Clara B. Taylor and J. F. Taylor, her husband, did not record or cause to be recorded until long after the negotiation to the complainant of the twenty-two hundred fifty dollars note and mortgage above referred to, the assignment to the said Clara B. Taylor of the said twenty-five hundred dollars note and mortgage, so that at the time the complainant became the holder of the said twenty-two hundred fifty

dollars note and mortgage it had no notice from the records that any one other than the said D. Hale Wilson was the holder thereof, and, as before alleged, the complainant had no actual notice or knowledge of the existence of the said twenty-five hundred dollars note and mortgage until after it had become the holder of the said twenty-two hundred fifty dollars note and mortgage.

7. That the complainant is informed and believes. and therefore avers, that about the 19th day of August, 1910, one Clyde E. Wilson, a brother of the said D. Hale Wilson, and associated with him in business, executed and delivered to the said Mrs. Clara B. Taylor as additional security for her twenty-five hundred dollar note, . from D. Hale Wilson, or in partial satisfaction thereof a deed conveying to her lots eighteen to twenty-five (18-25) inclusive in the Maxent Tract in Pensacola, Florida, and that she has other securities for her said twenty-five hundred dollar note, the nature and extent of which the complainant does not know.

8. That the complainant is informed and believes and therefore avers that the respondent, W. V. Perry, claims to be the owner of the twenty-five hundred dollars note and mortgage above referred to by an assignment thereof from D. Hale Wilson claimed to have been made in or about the month of March, 1909, but avers that such assignment, if any, was made, was not recorded until after the negotiation to the complainant of the twenty-two hundred fifty dollar note and mortgage above mentioned and that the complainant had no actual knowledge or notice thereof, and that the said W. V. Perry, after the alleged assignment, if any was made, suffered and permitted the said twenty-five hundred dollar note and mortgage to be, and remain, in the hands of the said D. Hale Wilson, with-

out anything to indicate that he was not the actual owner thereof.

9. The complainant avers that although the said note, of which exhibit "A" is a copy, provided that interest thereon is payable quarter-annually, the respondent, E. R. Caro, has never paid any interest thereon and has never paid any part of the principal thereof, save and except as hereinabove set forth, but the complainant had no knowledge at the time of the taking of the said note and mortgage that there had been any default in the payment of interest or that there was any defense whatever on the part of the said Caro against the said note and mortgage in the hands of the said D. Hale Wilson or any endorsee or assignee thereof. The complainant also further avers that the said Caro likewise never paid any interest or any part of the principal on his said twenty-five hundred dollar note and mortgage, which is now held by the said C. B. Taylor as above set forth.

10. That by reason of the premises the complainant avers that the twenty-two hundred fifty dollar ($2,250) note and mortgage held by it and sought to be foreclosed herein, are valid and binding securities in its hands as against all of the respondents herein and by reason of the complainants, being a bona fide holder thereof in due course for value, the said mortgage is a lien upon the mortgaged property prior in dignity to that of the said mortgage held by the respondent, Clara B. Taylor, and claimed by the respondent, W. V. Perry.

11. That in the month of December, 1910, the said D. Hale Wilson died intestate, and left surviving him as his sole heirs, his widow, Bessie B. Wilson, and his child, Elizabeth Hale Wilson, a minor; that the said Bessie B. Wilson has duly qualified as administratrix of the estate of the said D. Hale Wilson, and she is made a party here-

to that she may assert any defense, if any, she has in her capacity as administratrix and she and her said child are made parties defendant that they may assert any rights, if and they have, in the mortgaged property, as well as any defense they may be able to show as against the foreclosure of the said twenty-two hundred fifty dollar mortgage.

The premises considered the complainant prays that upon final hearing Your Honor will order, adjudge and decree that the said mortgage, of which a copy is hereto attached marked exhibit "B," is a lien upon the property therein described, to-wit: Lots Six, Seven and Eight (6, 7 & 8) of block nineteen (19), in East Pensacola, according to the map of said East Pensacola of record in the office of the Clerk of the Circuit Court of Escambia County, Florida, prior in dignity to the said note and mortgage for twenty-five hundred dollars held by the respondent, Clara B. Taylor, and that the respondent, E. R. Caro, be decreed to be indebted to the complainant by reason of the said note and mortgage, in the sum of twenty-two hundred fifty dollars, with interest thereon from December 8, 1908, at eight per cent. per annum, and that he be decreed to be further indebted in the sum of fifteen dollars ($15) plus ten per cent. of the principal and interest of the said note as fees for the attorneys of the complainant herein, and that he be required in a short day in the said decree to be named, to pay over to the complainant the said indebtedness, and that in default thereof, the said mortgage be decreed to be foreclosed and the mortgaged property be decreed to be sold in the manner prescribed by law, and equity practice, to satisfy the said several sums decreed to the complainant, and that the said mortgage may be decreed to be a lien prior in dignity upon the said property to that of the said twenty-

five hundred dollar mortgage held by the respondent, Clara B. Taylor. The complainant further prays that if upon final hearing it should be adjudged that the lien of the said twenty-five hundred dollar mortgage made by the said E. R. Caro, and now held by the said respondent, Clara B. Taylor, and claimed by the respondent, W. V. Perry, is equal or superior in dignity to the lien of the complainants' mortgage here sought to be foreclosed; that Your Honor, by appropriate decree, will require the respondent, Clara B. Taylor, and her husband, J. F. Taylor, if he be found to be interested to discover what securities they, or either of them have for the indebtedness of D. H. Wilson evidenced by his note to the said Clara B. Taylor and that they be required first to exhaust such other securities, if any they have, before undertaking to enforce the said note and mortgage of E. R. Caro for twenty-five hundred dollars against the property described in exhibit "B."

TO THE END, Therefore, that the respondents, Clara B. Taylor and J. F. Taylor, her husband, and E. R. Caro, Bessie B. Wilson, in her own right and as administratrix of the estate of D. Hale Wilson, deceased, and Elizabeth Hale Wilson and W. V. Perry, may, if they can show cause why the relief herein prayed for should not be granted, may it please the court to grant unto the complainant the State's most gracious writ of subpoena in due form of law directed to the said Clara B. Taylor and J. F. Taylor, her husband, E. R. Caro, Bessie B. Wilson, in her own right and as administratrix of the estate of D. Hale Wilson, deceased, and Elizabeth Hale Wilson, and W. V. Perry, commanding them and each of them on a day therein to be named and under a penalty therein to be fixed to appear and answer this bill of complaint. May it also please Your Honor to grant unto your Orator such

other, further and different relief as to Your Honor in the premises may seem just, equitable and right.

And, as in duty bound, your orator will ever pray."

The exhibits attached to the bill are as follows:

"$2,250.00.          Pensacola, Fla., December 8th, 1908.

Two years after date I promise to pay to the order of D. Hale Wilson twenty-two hundred and fifty ($2,250) dollars for value received with interest at the rate of eight per cent. per annum from date until paid.   Interest payable quarter-annually.

Payable at the office of D. Hale Wilson & Co., Pensacola, Fla.

All persons now or hereafter becoming parties hereto hereby waive demand and protect, and notice of demand, non-payment and protest.   After default, in payment and this note shall have been placed in the hands of an attorney for collection, We (I) agree to pay Attorneys' fees of five per cent if paid before suit, and Ten per cent. if paid after suit, and all costs of collection.

Endorsed:—                          E. R. Caro.

    D. Hale Wilson."

"State of Florida,
Escambia County.

                    Mortgage Deed.

                    Know all men by these Presents,
That I, E. R. Caro (a single man) for and in consideration of the sum of Twenty-two hundred and fifty ($2,250.00) Dollars, to me in hand paid by D. Hale Wilson, the receipt whereof is hereby acknowledged, have granted, bargained and sold, and by these presents do grant, bargain, sell and convey unto the said D. Hale Wilson, his heirs and assigns, forever, the following described real estate, situate, lying and being in the city of Pensacola, County of Escambia, State of Florida, to-wit:—

Lots six, seven and eight (6, 7 & 8), block nineteen (19), East Pensacola, according to map of East Pensacola, of record in the office of the Clerk of the Circuit Court, Clerk of Escambia County, Florida.

Together with the tenements, hereditaments and appurtenances thereunto belonging or appertaining, the whole free from all exemption and right of homestead.

And I, the said mortgagor, for myself and my heirs, do covenant with the said mortgagee, his heirs and assigns, that I am well seized of said property, and have a good right to convey the same; that it is free from any lien or incumbrance in law or equity, and that said mortgagor shall and will warrant and by these presents forever defend, the said premises unto the said mortgagee. his heirs and assigns against the lawful claims of all and every person or persons whomsoever.

THE FOREGOING CONVEYANCE is intended to be, and is, a mortgage to secure payment of one promissory note of date —————— for the sum of twenty-two hundred and fifty ($2,250.00) dollars, made by the said E. R. Caro, payable to the order of the said D. Hale Wilson, the said mortgagee, two years after date, with interest from date until paid, at the rate of eight per cent· per annum, the said interest payable quarter-annually at the office of D. Hale Wilson.

The mortgagor covenant that he will keep perfect and unimpaired the security hereby given, that he will keep the improvements upon said mortgaged property insured for a sum not less than two thousand ($2,000) dollars, in an insurance company or insurance companies, to be approved by the mortgagee, loss, if any, payable to the mortgagee as his interest may appear, until such note be fully paid; that he will pay all taxes, assessments and charges which may or might become liens superior to that

hereby created, and that if such insurance be not procured or maintained, or such taxes, assessments and charges be not paid, the mortgagee may procure and maintain such insurance, and pay such taxes, assessments and charges, and the lien hereby created shall extend to all such sums expended, with interest at the rate of 10 per cent. per annum.

The mortgagor agree that the indebtedness covered by this mortgage shall become immediately due and payable and this mortgage shall become immediately foreclosable, for all sums secured hereby, if the said indebtedness or any part thereof, or the said interest, or any installment thereof, shall not be paid according to the terms of the said note, or if the mortgagor shall omit the doing of anything herein required to be done for the protection of the mortgagee, and all costs and expenses, including attorneys' fees and commissions, incurred in collecting this mortgage debt, shall be a part of the mortgage debt and a lien upon the mortgaged property, and if a foreclosure of this mortgage be had, or a suit to foreclose the same be rightfully begun, he will pay all costs and expenses of the said suit, including an attorneys' fee, to the attorney of the complainant foreclosing, of $15.00 and 10 per cent. upon the amount decreed to the complainant, which costs and fees shall be included in the lien of this mortgage and in the sum decreed upon foreclosure.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this ———— day of December, A. D. 1908.

Signed, sealed and delivered in the presence of

|  |  |
|---|---|
|  | E. R. Caro    (Seal) |
| Clyde E. Wilson, | (Seal) |
| C. V. Thompson, | (Seal) |

"State of Florida,
County of Escambia.

Before the subscriber personally appear E. R. Caro (a single man), and known to me to be the individual described, and acknowledged that he executed the foregoing instrument for the uses and purposes therein set forth.

Given under my hand and official seal this ―――― day of December, 1908.

(Notary Seal(                          C. V. Thompson,
             Notary Public State of Florida at large.
             My commission expires March 20th, 1912.
Assigned to Amer. Nat'l Bank.
                     Assignment recorded Aug. 9, 1910,
       In Mortgage lien assignment Book No. 3, Page 167.
                     Jas. Macgibbon, Clerk Circuit Court.
State of Florida,
Escambia County.

I hereby certify that the above and foregoing is a true copy of the original as the same appears of record at page 307 of volume 44 of the Mortgage Records of Escambia County, Florida, now remaining in my office as recorded February 4, 1909.

Witness my hand and official seal this 21st day of March, 1911.

                          Jas. Macgibbon,
       Clerk Circuit Court, Escambia County, Florida.
(Official Seal)           By Thos. Johnson, D. C."

To the bill the appellants interposed the following demurrer:

"Now come the defendants, Clara B. Taylor and her husband, J. Frank Taylor, and demur to so much of the bill of complaint herein as seeks to have the decree adjudging that the mortgage claimed by the complainant

upon the property described in the bill is a lien prior in dignity to the mortgage for ($2,500.00), twenty-five hundred dollars held by the defendant, Clara B. Taylor, and for cause of demurrer shows:

1. That the complainant hath not in and by its said bill made or stated such a case as doth entitle complainant to the relief prayed for in said bill as above stated.

2. The bill of complaint shows that the complainant purchased the note and mortgage, which it claims to own, subsequent to the time when the principal of the said note was past due because of the failure of the mortgagor to pay the interest installments as provided by said mortgage, and that said mortgage was cancelled and discharged by the giving of the mortgage, which the bill shows is claimed by the defendant, Clara B. Taylor.

3. Upon the allegations of the bill the mortgage lien of the defendant, Clara B. Taylor, is superior to the mortgage lien of the complainant.

4. Upon the allegations of the bill the mortgage lien of the defendant, Clara B. Taylor, is not inferior to that of the complainant."

Upon this demurrer the following order was made:

"The above styled and entitled cause coming on for hearing on the demurrer of Clara B. Taylor and her husband, J. Frank Taylor, and the demurrer of E. R. Caro to the bill of complaint herein, and the same having been argued by counsel for the respective parties the court being now advised of its opinion.

IT IS ORDERED, ADJUDGED AND DECREED, That the said demurrers be and they are hereby overruled and the defendant interposing the said demurrers are allowed until the rule day in October, 1911, in which to plead or answer the said bill of complaint, and in default of their answering or pleading to the bill of com-

plaint within such time; it is ordered that the said bill of complaint be taken as confessed against such of the said defendants as fail to plead or answer thereto.

DONE AND ORDERED at Chambers at Pensacola, Florida, this 7th day of September, A. D. 1911."

From this order it appears that the defendant, E. R. Caro, also interposed a demurrer to the bill, which was likewise overruled, but such demurrer is not incorporated in the transcript. Neither does any entry of appeal by Caro appear therein. As to what course may have been pursued by the other defendants we are not advised. Clara B. Taylor and J. Frank Taylor have appealed from the order overruled their demurrer, and question the correctness of such order.

*Blount & Blount & Carter,* for Appellants;

*Reaves & Watson,* for Appellees.

SHACKLEFORD, J. (*after stating the facts*)—The counsel for the appellants frankly state in their brief:

"As the court will observe the pleadings are carefully framed for the purpose of testing the validity of the Bank's mortgage, and its priority over or equality with the mortgages of Mrs. Taylor without the expense and trouble of taking testimony. At the hearing no technical question relating to the sufficiency of the pleadings to present these question was raised, but the Judge was requested to and did decide the demurrer upon the merits. We shall therefore address ourselves directly to the questions mentioned above, as we have no doubt counsel for the Bank will do, as all parties desire a decision upon the merits."

As we said in Burton v. McMillan, 52 Fla. 228, text 241,

42 South. Rep. 879, text 882, 11 L. R. A. (N.S.) 159: "We pause for a moment to express our approbation and appreciation of the skill and laudable spirit exhibited by the attorneys of the respective parties in so shaping the record as to present to the court the naked questions of law involving the real merits of the case, without undue prolixity and without unnecessary complications." We would also pay a merited tribute to the full and able briefs with which the respective counsel have favored us. The counsel for E. R. Caro, one of the defendants in the court below, has also submitted a brief, but, as Caro entered no appeal from the order overruling his demurrer, he is not before us, we have never acquired jurisdiction of his person, and we are not in a position to adjudicate his rights. We are not even apprised as to the grounds of his demurrer, as the same is not copied in the transcript. We have copied the pleadings in the foregoing statement, without any attempt at condensation, in order to render this opinion the more readily intelligible.

We would first call attention to Section 2936 of the General Statutes of 1906, which is as follows:

"2936. Sum Payable To Be Certain.—The sum payable is a sum certain within the meaning of this chapter, although it is to be paid:

1. With interest; or

2. By stated installments; or

3. By stated installments, with a provision that upon default in payment of any installment or of interest, the whole shall become due; or

4. With exchange, whether at a fixed rate or at the current rate; or

5. With costs of collection or an attorney's fee, in case payment shall not be made at maturity."

It will be observed that the note for $2,250.00, pur-

chased by the appellee, as alleged in the bill of complaint, is for a sum certain, and would be, under the provisions of such section, even if it contained a provision to the effect that, upon default in payment of any installment of interest, which interest is payable quarter annually, the whole amount of such note should thereby become due and payable. The note contains no such provision, but the accompanying mortgage, given to secure the payment of the indebtedness and which was assigned to the appellee at the same time that the note was endorsed to it does contain such provision. It cannot be successfully contended, then, that such note was not negotiable or that the accompanying mortgage was not assignable. The appellee states in its brief that the negotiable character of the note and mortgage was conceded by the appellants at the hearing in the court below, and that it understands from the brief of the appellants that such concession is likewise made here. That this is the law see the well-reasoned case of Thorp v. Mindeman, 123 Wis. 149, 101 N. W. Rep. 417; 107 Amer. St. Rep. 1003, construing the section of the negotiable instrument law which we have copied above. Also see the discussion in Frost v. Fisher, 13 Colo. App. 322, 58 Pac. Rep. 872, and Carpenter v. Longan, 16 Wall (U. S.) 271. It should be borne in mind that the "Negotiable Instrument Law," which has been adopted by a majority of the States, including Florida, is "primarily a codification of the rules of the law merchant." It has also been termed "in substance a codification of the principles of the common law governing negotiable instruments." See Section 1 of Selover's Negotiable Instrument Law, 2nd ed.

Having found that the note in question was negotiable, we must now determine whether or not, at the time it was purchased and taken by the appellee, it was overdue, as

disclosed by the allegations in the bill. Here again we must have recourse to our statute upon the subject. Section 2985 of the General Statutes of 1906, which also forms part of the Negotiable Instrument Law, is as follows:

"2985. Who Is Holder in Due Course.—A holder in due course is a holder who has taken the instrument under the following conditions:

1. That it is complete and regular upon its face;

2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

3. That he took it in good faith and for value;

4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

As we have already seen, the note in question itself contained no provision to the effect that, upon default in payment of any installment if interest, which interest was payable quarter-annually, the whole sum of such note should thereby become due and payable, but the accompanying mortgage, given to secure the payment of the indebtedness, which was executed on the same day with the note and was assigned to the appellee at the same time that the note was endorsed to it, contains the following provision:

"The mortgagor agrees that the indebtedness covered by this mortgage shall become immediately due and payable and this mortgage shall become immediately foreclosable, for all sums secured hereby, if the said indebtedness, or any part thereof, or the said interest, or any installment thereof, shall not be paid according to the terms of the said note, or if the mortgagor shall omit the

doing of anything herein required to be done for the protection of the mortgagee."

It may be well also to call attention to the fact that the mortgage expressly states that it "is intended to be, and is, a mortgage to secure payment of" the note therein described.

The appellants rely upon Graham v. Fitts, 53 Fla. 1046, 43 South. Rep. 512, 13 Ann. Cas. 149, which holds that "where a note evidencing a debt and a mortgage to secure its payment are executed at the same time in one transaction, and the mortgage refers to the note, they should be considered together in determining their meaning and effect." Conceding the correctness of this holding, read, as it must be, in the light of the facts stated in the opinion, we fail to see wherein it helps the contention of the appellants. In that case the note itself contained a provision to the effect that, upon default in payment of the interest, the entire sum of principal and interest should become due and payable, at the option of the payee in the note or of the legal holder thereof. Moreover, in that case, as a reading of the opinion readily discloses, the questions now before us for consideration and determination were not then presented to the court. As far back as Stewart v. Preston, 1 Fla. 10, 44 Am. Dec. 621, it was held that "as a general rule, the endorsement of the notes secured by a mortgage carries with it the mortgage," the court deeming the principle so well settled that it stated it was not "necessary to cite authorities in support of it." This being true, it necessarily follows, as is laid down in 1 Jones on Mortgages (6th ed.), Sec. 834, that "the debt being the principal think imparts its character to the mortgage." In the same paragraph it is stated that "the mortgage rather is regarded as following the note, and as taking the same character; and it is the generally

received doctrine that the assignee of a mortgage securing a negotiable note, taking it in good faith before maturity, takes it free from any equities existing between the original parties." See the numerous authorities cited in the note thereto, and in the note on pages 149 to 152 of 5 Ann. Cas. Also see to. the same effect 1 Daniel on Negotiable Instruments (5th ed.), Sec. 834. As was said in Frost v. Fisher, 13 Colo. App. 322, 58 Pac. Rep. 872, "The general doctrine is that the note is the principal thing, and the mortgage an accessory, and that the transfer of the debt *ipso facto* carries with it the security." This is quite an instructive case, as is also Thorp v. Mindeman, 123 Wis. 149, 101 N. W. Rep. 417, 107 Amer. State Rep. 1003, wherein it was held as follows: "The promise to pay is one distinct agreement, and, if couched in proper terms, is negotiable. The pledge of real estate to secure that promise is another distinct agreement, which ordinarily is not intended to affect in the least the promise to pay, but only to give a remedy for failure to carry out the promise to pay. The holder of the note may discard the mortgage entirely, and sue and recover on the note." Our own holding in Scott v. Taylor, filed this day, is squarely in line with the principle enunciated in the authorities which we have cited. An instructive note upon the point will be found in 35 L. R .A. 536.

Even if it be true, as was held in Hodge v. Wallace, 129 Wis 84, 108 N. W. Rep. 212, 116 Amer. St. Rep. 938, that "a note providing expressly that delinquency in payment of any interest 'shall cause the whole note to, immediately become due and collectible, becomes due in such case absolutely, not merely at the option of the holder, and one thereafter taking the note from the payee takes it subject to the equities between the original parties," that would not prove decisive of the case at bar, for the reason that

the note involved therein contains no such provision, as we have already had occasion to emphasize. As is also recognized and expressly stated in the cited case, "there are adjudications the other way, notably one particularly relied upon by counsel for the plaintiffs, Chicago Ry. Co. v. Merchants' Bank, 136 U. S. 268, 284, 286, 10 Sup. Ct. Rep. 999, 34 L. Ed. 349, affirming (C.C.), 25 Fed 809." The decisions of the Wisconsin court itself upon this point are by no means in entire harmony as a reading of the prior decisions cited in the opinion from which we have just quoted will show. See also Kelly v. Whitney, 45 Wis. 110, 30 Amer. Rep. 697. The Missouri courts would also seem to have been on both sides of the question. See Noell v. Gaines, 68 Mo. 649, noting the vigorous dissenting opinion of Judge Hough; Owings v. McKenzie, 133 Mo. 323, 33 S. W. Rep. 802; Rumsey v. People's Ry. Co., 154 Mo. 215; 55 S. W. Rep. 615; Board of Trustees of Westminster College v. Piersol, 161 Mo. 270, 61 S. W. Rep. 811; Merchants' Nat. Bank v. Brisch, — Mo. App —, 136 S. W. Rep. 28. It must be admitted that the authorities upon this point are in irreconcilable conflict. We shall not attempt to cite all that we have examined. Neither do we feel called upon to go into any extended discussion of it, since the note with which we are dealing contains no provision to the effect that it shall be dishonored by reason of the failure to pay the installments of interest as therein stipulated. It would seem that the weight of authority supports the principle enunciated by Mr. Justice Harlan in Chicago Ry. Co. v. Merchants' Bank, *supra.* See Rose's Notes to such case; 7 Cyc. 953; U. S. National Bank of Portland v. Floss, 38 Ore. 68, 62 Pac. Rep. 751, 84 Am. St. Rep. 752; Gillette v. Hodge, 170 Fed. Rep. 313; Kelley v. Whitney, 45 Wis. 110, 30 Am. Rep. 697; Cooper v. Hocking Valley National Bank, 21 Ind. App. '358, 69

Amer. St. Rep. 365. We would also refer especially to Judge Freeman's able discussion in monographic note on 196 of 100 Amer. Dec.

It is not alleged in the bill that, at the time of the purchase of the note and mortgage by the appellee, it knew that there had been a default in the payment of interest, but the contrary is alleged. Upon this point see First National Bank of Waverly v. Forsyth, 67 Minn. 257, 69 N. W. Rep. 909, 64 Amer. St. Rep. 415. We would also refer, with approval, to National Bank of North America v. Kirby, 108 Mass. 497, text 500, from which we take the following excerpt:

"This note was due at the end of forty-eight months, and the interest was made payable annually. It was taken by the plaintiffs before maturity; but, upon it appearing that no interest had been paid for two years or more, the court was asked to rule that this alone amounted to a dishonor, and would subject the note to all defenses. It is to be noticed, that the fact relied on is only that the interest had not been paid; not that any knowledge of it was ever brought home to the plaintiffs beyond the fact that no payments were indorsed. The court declined to rule as requested; and we are of opinion that the mere fact that there appears to be no indorsement of one or more installments of interest will not justify the ruling asked for.

If, as it is argued, it be true that the failure to pay interest ever as matter of law amounts to a dishonor of a note, it can only affect one who has knowledge of the fact. Payment of interest is not always indorsed, and other evidence is often relied on to prove it. Want of indorsement does not apprise the party, to whom such note is transferred, that there has been no payment; and when the note is only taken as collateral, and accuracy

is not required in ascertaining the amount due for interest, the fact that overdue interest is not indorsed might have slight influence in putting the purchaser upon his inquiry."

It follows from what we have said that we have reached the conclusion that, upon the allegations in the bill in the instant case, which are admitted to be true by the demurrer, the appellee must be held to be a holder in due course of the promissory note, under the provisions of Section 2985 of the General Statutes of 1906, which we have copied above. In other words we are of the opinion that the allegations of the bill show that, at the time such note was negotiated to the appellee, it "had no notice of any infirmity in the instrument or defect in the title of the person negotiating it," and "that he became the holder of it before it was overdue." We are strengthened in this conclusion by the provisions of Section 2989 of the General Statutes of 1906, which section is as follows

"2989. Infirmity in Instrument.—To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

We are clear that the allegations in the bill fail to show any "bad faith" in the action of the appellee in taking the note and mortgage. As is well said by Mr. Crawford in his Annotated Negotiable Instrument Law (2nd ed.), page 54, discussing this section of such law: "The holder is not bound at his peril to be on the alert for circumstances which might possibly excite the suspicion of wary vigilance; he does not owe to the party who puts the paper afloat the duty of active inquiry in order to avert the im-

putation of bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence. The holder's rights cannot be defeated without proof of actual notice of the defect in title or bad faith on his part evidenced by circumstances. Though he may have been negligent in taking the paper, and omitted precautions which a prudent man would have taken, nevertheless, unless he acted *mala fide,* his title, according to settled doctrine, will prevail." See the numerous authorities there collected. This language of Mr. Crawford was also quoted with approval by Mr. Chief Justice Rudkin, in Gray v. Boyle, 55 Wash. 580, 104 Pac. Rep. 829, 133 Amer. State Rep. 1042. Also see Judge Freeman's note thereto and the authorities which he cites. From the many cases upon this point which we have examined we select the following: Mass. National Bank v. Snow, 187 Mass. 159, 72 N. E. Rep. 959; DeTriot National Bank v. Union Trust Co., 145 Mich 656, 108 N. W. Rep. 1092, 116 Amer. St. Rep. 319; Winter v. Nobs, 19 Idaho 18, 112 Pac. Rep. 525; Union National Bank of Kansas City v. Neill, 149 Fed. Rep. 711; First State Bank of Pleasant Dale v. Borchers, 83 Neb. 530, 120 N. W. Rep. 142; Smith v. Livingston, 111 Mass. 342; Spencer v. Alki Point Transp. Co., 53 Wash. 77, 101 Pac. Rep. 509. Also see Selover's Negotiable Instrument Law (2nd ed.), page 225.

As we have already seen, the fact that the interest was payable quarter-annually and that no payments thereof were endorsed on the note or accompanying mortgage did not make the note dishonored, it being positively alleged in the bill that, at the time of the purchase of the note, the appellee had no knowledge that there had been any default in the payment of interest, or that there was

any defense on the part of Caro against the note and mortgage.

The writer hereof is of the opinion that what has already been said is sufficient for the disposition of this appeal. He does not consider it necessary to consider the contention of the appellants as to the effect of the constructive notice afforded to the appellee by the record of the $2,500.00 mortgage. However, he is in full accord with the views of the Chief Justice upon this point, who, at the request of the writer hereof, has briefly expressed them in writing, and the writer willingly makes such written statement, which here follows, a part of this opinion:

The record of the $2,500.00, bearing the same date as the $2,250.00 mortgage, covering the same property and being to the same original mortgagee, was constructive notice only that it was a lien not superior to, if of equal dignity, with the $2,250.00 mortgage. The fact alleged in the bill and admitted by the demurrer that the $2,500.00 mortgage was in reality executed some days after the execution of the $2,250.00 mortgage, was, at the time of the assignment, actually or constructively admittedly not known to the assignee of the $2,250.00 mortgage, and it is assumed that the record of the $2,500.00 mortgage indicated only that it was executed on the same day as the $2,250.00 mortgage, and to the same original mortgagee, and the assignee of the $2,250.00 mortgage apparently had no knowledge or notice of the facts that the $2,500.00 mortgage was in reality executed some days after the execution of the $2,250.00 mortgage, and was in substitution of the $2,250.00 mortgage.

The holder of the $2,500.00 mortgage took it with notice of the record of the $2,250.00 mortgage, which record apparently indicated that the $2,250.00 mortgage was at

least of equal dignity with the $2,500.00 mortgage. If the holder of the $2,500.00 mortgage claims superiority because the $2,500.00 mortgage was executed in substitution for the $2,250.00 mortgage, this fact was not of record, and was not known to the bank who became the holder of the $2,250.00 mortgage and note, that had been by the maker and mortgagor left in its negotiable state in the hands of the original payee and mortgagee. The holder of the $2,500.00 mortgage cannot have priority over the *bona fide* holder for value of the $2,250.00 mortgage because of the latent equity of which the holder of the $2,-250.00 mortgage had no notice or knowledge. As to this latent equity the holder of the $2,500.00 mortgage has no better right than the original mortgagee had, since the record of the $2,250.00 had not been cancelled, and the negotiable note had been left in the hands of the original payee and subsequently came into the hands of the bank as a *bona fide* holder for value and without notice of the latent equity growing out of the intended substitution. If the holder of the $2,500.00 mortgage claims superiority over the $2,250.00 mortgage by virtue of the intended substitution she should at least show either that the note and mortgage for which hers was intended to be substituted were surrendered or cancelled, or that the subsequent holder of the $2,250.00 mortgage had knowledge or notice of the intended substitution or took the assignment under such circumstances as amount to a fraud or had faith, or some other ground of equitable right to priority.

It follows that all of the contentions of the appellants must be decided adversely to them, and that the order overruling the demurrer must be affirmed.

WHITFIELD, C. J., and TAYLOR, COCKRELL and HOCKER, J. J., concur.